# Louisville & Nashville Railroad Co. *v.* Pearson, Adm'r.

*Action for Injuries Resulting in Death of Employe.*

1. *Ladder or hand-hold on car, is part of ways, machinery, etc.*—A count in a complaint charging negligence in that the hand-hold on a car was in a defective condition, and that the ways, works and machinery of defendant were in a defective condition, is not obnoxious to a demurrer on the ground of inconsistency.

2. *Declarations as res gestœ.*—The declarations of plaintiff's intestate made within five minutes after receiving the fatal injuries, after he had called for help, in response to the inquiry, "What in the world ?" replied, "The hand-hold let me down," are not admissible in evidence as part of the *res gestœ.*

3. *Proximate cause.*—When the injury to a brakeman was caused by the breaking of the hand-hold as he was ascending a car, evidence of the use of "kicking switches," or of the position of the engineer at the time, or that the car might have been safely coupled by using the engine, is irrelevant, as these matters were not the proximate cause of the injury complained of.

4. *Contributory negligence.*—That the injury occurred, not from the way selected, but from the defect in the ways, works and machinery complained of, when but for such defect the duty might have been performed with reasonable safety, will not bar a recovery because of contributory negligence on the ground that there was another mode of performing the work.

5. *Evidence of negligence in failing to discover defects.*—Evidence that the defective car was an old one, that the nut was gone from the bolt which fastened the hand-hold, and that the end of the bolt was rusty, is admissible to show the length of time the defect had existed.

6. *Rule requiring railroad employees to inspect machinery before using it—proper.*—A railroad company may by rules, adopted for the government of its employees, require them to inspect machinery before using it and such rule imposes on them the duty of making a reasonable examination, but in an action for injuries resulting from defective machinery, it is a question of fact for the jury to determine whether the employe made such examination or not.

[Louisville & Nashville R. R. Co. v. Pearson, Adm'r.]

7. *Proximate cause—irrelevant evidence.*—When the injury complained of is caused by a defective hand-hold on a car, a rule of defendant requiring conductors to see that the brakes on cars left on sidings are set, the wheels blocked and cars coupled, is irrelevant.

8. *Evidence merely appealing to feelings of jury, irrelevant.*—It is not proper to permit the shoe worn by a deceased brakeman at the time he received the fatal injuries to be exhibited to the jury, as evidence, when offered simply as an appeal to their feelings.

9. *Measure of damages.*—When the only evidence relied upon to furnish data for the measure of damages for the death of an employe, is the statement by his widow that at the time of his death, "we were saving thirty-five dollars a month outside our living," furnishes an insufficient basis for a verdict for damages.

APPEAL from City Court of Birmingham.

Tried before Hon. W. W. WILKERSON.

This action was brought by B. S. Pearson as administrator of Charles Creecy, deceased, against the Louisville & Nashville R. R. Co. to recover damages for negligently causing the death of a brakeman in the employment of the defendant. There was a verdict for $5,000. for the plaintiff.

The complaint, as amended, alleged that the death of the intestate was caused "by the negligence of the defendant company, in using and operating an old, dilapidated car or gondola; that the hand-hold or hand-holds on said car were in a worn or defective condition; that, as plaintiff's intestate. attempted to ascend said car to put on brakes, the hand-hold of the same gave way, producing the injuries aforesaid to plaintiff's intestate; and plaintiff avers that said injuries were caused by reason of the defect in the condition of the ways, works, machinery, or plant connected with or used in the business of the defendant company."

The defendant assigned the following ground of demurrer to the complaint: The allegations of said count of said complaint are inconsistent in this, that "in one part of said count it is alleged that the plaintiff's injury was caused by a defective car and in another part of said count of said complaint, it is alleged that the said injury was caused by a defect in the ways, works, plant or machinery of defendant," which demurrer was overruled, and the case tried on the pleas of not guilty and contributory negligence.

The evidence for the plaintiff tended to show that his intestate was a brakeman in the service of the defendant and that the injuries resulting in his death were received while he was ascending a car on defendant's track for the purpose of putting on brakes. He had been ordered by the conductor to switch the car which was being done by using the "kicking switch." Having fastened the brakes on one car, he ran across the track to catch an ore-car and in attempt-

Vol. 97.

ing to ascend it, a hand-hold gave way and precipitated him to the ground under the car, which mangled him so that he died in a short time. Against the objection of defendant, plaintiff read to the jury from defendant's rule book, rule No. 153, which is as follows: "Conductors must see that the brakes are set on cars that they leave on sidings. When the siding is on a grade, they must couple together all cars standing on it, and, in addition to setting the brakes, the wheels should be blocked, to prevent the cars from moving."

Plaintiff offered in evidence, a shoe identified as having been worn by the deceased at the time he was killed, and it was exhibited to the jury against the objection of defendant. There was testimony admitted against the defendant's objection that the car was old, that the tap on the bolt fastening the hand-hold was gone, and the end of the bolt rusted over.

The testimony of the defendant tended to show that the accident happened because of contributory negligence on the part of the deceased, that in running to the car to set the brakes, he first reached the end on which there was a safe way to ascend, but the evidence on these points was conflicting.

The defendant excepted to two portions of the oral charge of the court, and to refusal to give twenty-five charges requested by it, and these with the rulings on the evidence constitute the grounds for fifty-five assignments of error, but the foregoing comprises all necessary to an understanding of the opinion.

HEWITT, WALKER & PORTER, for appellant, on the point that the complaint was defective, cited *R. R. v. Bradford*, 86 Ala. 574; *R. R. v. Dusenbury*, 94 Ala. 413; that the declaration of deceased was incompetent: *Tanner v. L. & N. R. R.* 60 Ala. 643; *M. & C. R. R. v. Womack*, 84 Ala. 149; *A. G. S. R. R. v. Hill*, 90 Ala. 71; *Taby v. H. R. R. R.* 17 N. Y. 133; *Adams v. R. R.* 74 Mo. 553. The brief is very lengthy and cites many other authorities.

M. N. WHITTAKER, for appellee.

COLEMAN, J.—The complaint as amended presented a good cause of action and the demurrer to it was properly overruled. Declarations of plaintiff's intestate were admitted in evidence against the objection of the defendant. The admission of this evidence is assigned as error. It is claimed that these declarations were properly admitted as a part of

the *res gestae.* There is evidence tending to show that as plaintiff's intestate attempted to ascend to the top of a moving car the "hand hold" by which he endeavored to pull hinself up gave way, and he was precipitated in front of the car, and was run over and crushed. The negligence charged as the cause of the injury was the defective condition of the "hand-hold." When the car came to a stand-still the wheel of the car was on the body of deceased. The evidence of the witness Lum Edwards shows that he, the witness, was but a few yards off; that deceased called to him to "come and help him;" that he ran up to deceased, and that while the wheel was on the body of deceased, the witness exclaimed "Mr. Creecy what in the world?" and deceased said, "that hand-hold let me down." The evidence tends to show that the car was moved off the body about or a little less than five minutes after the car stopped.

Jesse Williams testified that after the car was rolled off the body, in reply to a question as to how it occurred, plaintiff's intestate said "The hand-hold let me down."

Charley Roberts' testimony is to the same effect. Bob Patterson testifies that he was seventy-five or one hundred yards off when the car run over deceased, "that he got there about five minutes after the car got on him" that while the car was on him deceased said, "The hand-hold let me down." This statement of the declarations admitted as *res gestæ* suffices for a consideration of the question, as to whether they constituted a part of the *res gestæ* of the accident, and as such admissible in evidence : In *Gandy v. Humphries,* 35 Ala. 624, the principle is thus declared : "When it is said that declarations, to be admissible as a part of the *res gestæ,* must be contemporaneous with the principal transaction it is not meant that they shall be exactly coincident in point of time with the main fact. If they appear to spring out of the transaction, if they serve to elucidate it, and are made so shortly after the happening of the main fact, as to stand in the relation of unpremeditated result to it, the idea of deliberate design in making them being fairly precluded by the surrounding circumstances then they may be regarded as contemporaneous." In the case of the *Ala. Gr. So. R. R. Co. v. Hawk,* 72 Ala. 112, the same principle is declared, and it is added : "The evidence offered must not have the ear-marks of a device, or afterthought, nor be merely narrative of a transaction which is really and substantially past. . . . . . The time "*a few minutes*" does not appear to be so proximate to the main transaction, nor are the declarations made,

otherwise so closely connected with it, as an elucidating circumstance as to justly authorize the conclusion that they are not merely narrative of a past occurrence, which at the moment was finished and complete."

In the case of the *Richmond & Danville R. R. Co. v. Hammond*, 93 Ala. 181, in regard to declarations, admitted as *res gestæ*, it is said: "They were made five minutes or more after the collision, were not spontaneously made, but in answer to the question *"how it happened"* after a conversation with the witness as to the extent of his injury; and do not illustrate or explain or receive support from the transaction itself, unless it be as to his supposition that it happened from the carelessness of Hackett in not having out a flagman, which supposition would not have been competent evidence, had the deceased lived and testified for himself."

In Taylor on Evidence Vol. I, § 545 it is said : "In all these cases the principal points of attention are, whether the circumstances and declarations offered in proof were so connected with the main fact under consideration as to illustrate its character, to further its object, or to form in conjunction with it, one continuous transaction." The same rule is declared in almost similar language in 1 Gr. Ev. § 108.   Many phrases have been used in the endeavor to express definitely and clearly the proper relation and character of a declaration or act to the main fact, by which it becomes *res gestæ*. It is termed a "verbal act, from an act." "A natural impulse from an act," is that which "owes its birth to a preceding fact," "it must spring out of the transaction," "it must be spontaneous," and many others might be mentioned. Unless the main fact is relevant and competent evidence the *res gestæ* is inadmissible as evidence. If the declaration be a mere narration of a past complete act, it is not *res gestæ*. If it bear evidence of the exercise of reason, or that it is a conclusion of the mind after reflection, it is no part of the main fact, but a mere expression of opinion. In determining whether a declaration of circumstance is a part of the *res gestæ*, it is important to consider the time between the main fact or act, and the declaration or circumstance, but *res gestæ* can not be tried by any specified time or number of minutes.   The real enquiry is, did the main act *proprio vigore* further assert itself and demonstrate its character or intent by impelling the contemporaneous or subsequent declaration or act, offered in evidence, and without which the main act is left incomplete and only partially proven, or did the declaration or

circumstance offered as *res gestæ* originate from some cause extraneous to the main act. If traceable solely to the main act, as the producing cause, and the declaration or circumstance is illustrative of the main act, it is *res gestæ*, otherwise it is mere hearsay or irrelevant and inadmissible, as *res gestæ*.

The principle of law upon which the doctrine of *res gestæ* rests, should not be confounded with the principle of law under which the admissions of a party are admissible as *against* him, or with the principle upon which dying declarations are admitted as evidence.

Cases will arise in which it is difficult to determine whether the declaration or acts are a part of the main act, and *res gestæ*, or whether they are mere hearsay, and each case must in great measure be determined by the court when presented. Apply these principles of law to the facts of this case. It seems that the witness was some thirty yards off, saw the accident, that deceased saw him and called for assistance, that witness ran up to deceased, and exclaimed "Mr. Creecy what in the world?" This exclamation of the witness was in effect an enquiry, as to how the accident happened. It was made after deceased had called to him for help. The declaration of the deceased, "The hand-hold let me down" was more in the nature of a response to the enquiry of the witness "What in the world?" than a further assertion or demonstration of the main fact, manifesting itself in the declaration; and this is further apparent, when it is remembered that deceased had prior to that time, called to witness to assist him. We think the declaration was no part of the main fact. It is clear that the declarations of deceased, testified to, made after the car was removed from over the body, and those in response to questions as to "how it happened" under the facts as proven, were not *res gestæ*. The court erred in admitting the declarations of the deceased.

The evidence in relation to the safety or danger of using "kicking switches" or where the engineer was at the time of the accident, or that the coupling might have been safely effected by the use of the engine, was wholly irrelevant to the issue. Neither of these facts could be regarded as the proximate cause of the injury. Neither would it follow as a conclusion of law that if it was the safer way, for deceased to have ascended at the rear of the car, instead of the front, that he was guilty of contributory negligence if he selected the more dangerous way. If the deceased selected a dangerous way to perform

Vol. 97.

the duty, knowing that it was dangerous, when there was a safer way apparent to him, and the injury was the result of having selected the dangerous way, he would be guilty of contributory negligence. If, however, the duty might have been· performed in the manner undertaken, with reasonable safety, and the accident arose, not from the way selected, but from a defect in the ways, works and machinery as complained of, other principles must control. The questions then under the statute are : 1st. Did the defect exist, and did it cause the injury? 2d. Was it known to the master or employer or some person superior to the injured employe engaged in the service of the master or employer, or did it arise from or had not been discovered or remedied owing to the negligence of the master or employer, or of some person in the service of the master or employer and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition? 3d. Did the .injured person himself know of the defect or negligence causing the injury, and if so did he fail in a reasonable time to give information thereof as required by law? 4th. If deceased did not know of the defect, was he negligent in not knowing it, and thus guilty of contributory negligence? Questions of fact which invoke the application of legal principles must be ascertained by the jury. Testimony tending to show that the car was an old car and also that tending to show that the end of the bolt which was intended to fasten the "handhold" had become rusted over, and from which according to some of the evidence the tap. was gone, was admissible. Evidence of this character may be considered in determining the length of time the defect existed, if the jury should find the hand-hold was not in proper condition, and whether there had been negligence in not discovering or remedying the defect. How long this car had been in use by the Eureka Co. and when returned to the control of the defendant is not definitely proven. The defendant offered in evidence and read to the jury without objection the following rule of the company :

"Employees of every grade are warned to see for themselves before using them that the machinery and tools which they are expected to use, are in proper condition for the service required, and if not to put them in proper condition for the service required, or see that they are so put before using them. And the company does not wish or expect its employees to incur any risk whatever from which by the exercise of their own judgment or personal care, they can protect themselves; but enjoins them to take time in all cases

to do their duty in safety, whether they may at the time be acting under orders of their superiors or otherwise." It was further in evidence that "It was the duty of any of the trainmen who were handling a car to see if the car was not safe to be handled, and not to handle it unless it was safe." These rules of the company which require employees and train-men to see for themselves that the machinery and appliances which "they are expected to use are in proper condition," and that "the cars to be handled can be safely handled," have their proper application and limitation. Commenting on a similar rule in *Memphis & Charleston R. R. Co. v. Graham*, 10 So. Rep. 283, 94 Ala. 545, it is said: "So far as rule 140 or any other rule militates against the liability imposed upon the employer or master under section 2590 of the Code, or contravenes the principle of law which requires the employer or master to furnish and maintain suitable appliances for the prosecution of its business, and the right of the employe to presume that this has been done, it will be regarded as wholly inoperative and afford no protection to the employer or master; but so far as rule 140 imposes the duty upon employees, to examine for their own safety the condition of the cars, engines and machinery, &c., before using them or exposing themselves on or with the same, so as to ascertain as far as reasonably can be done, their condition and soundness, the rule is reasonable and proper. It can not be expected of car conductors or brakemen to make the same careful examination, and to be able to discover defects to the same extent, as that required of the employer or master, or person entrusted with this duty for the public safety of employees; but the character of the general duties to be performed by conductors and brakemen are such that they necessarily become more or less familiar with the appliances and machinery constantly in their use and under their supervision, and to know to some extent, when they are not in proper condition for safe use. To the extent of their information and the opportunities afforded to make such examination, consistently with their other duties, and the circumstances attending, they should observe and obey the rule." We regard the principles here declared applicable to the present case. The conductor directed the plaintiff's intestate, to place the cars in the train. It was necessary in order to carry out the order, to move the car from the track upon which it was standing to another line. While performing this duty, the accident occurred. There was no car inspector at Oxmoor where the accident occurred, upon whom the duty of examination of the cars specially de-

volved.   It may be that the rule offered in evidence, required
the conductor to examine the car "before handling it to see
that it was safe."   We think the rule, with proper limitation
as above declared, imposed some duty upon the deceased.
As was said in the *Orr case*, 91 Ala. 554:   "If such was the
duty of the employe and he negligently assumed they were
in proper condition, when they were not, and the injury
arose from his own failure in this respect, he would be guilty
of contributory negligence."   Whether the deceased made
any examination or not is a question of fact for the jury.   If
an examination was made, such as was consistent with the
orders given him by the conductor and his duty in carrying
them out, was the defect, if there was a defect, of such char-
acter as to be discovered by the exercise of reasonable care
by a person of his employment?   Was the "hand-hold" such
a part of the ways, works and machinery as to be constant-
ly in use, by him, and under his supervision?   What was
the extent and character of the defect if any?   Was it ap-
parent? or a latent defect, requiring more skill and care to
discover it than was consistent with his position as brake-
man, and opportunity, to make the examination?   We have
examined the record, in regard to the evidence relied upon
to furnish *data* for the measure of damages.   The wife tes-
tifies: "At the time of his death we were saving thirty-five
dollars a month outside of our living."   She does not testify
that the income was derived from his employment, and there
is no evidence to show his earnings.   We direct attention to
the omission that the same may be avoided on another trial.

We think the court erred in admitting in evidence rule
53.   We have been unable to see its relevancy to the mat-
ters in issue before the jury.

Human feelings are easily excited by the description of
great bodily injuries, or ghastly wounds, or the exhibition of
objects which appeal to the senses.   Sympathy or indigna-
tion once aroused, in the average juror readily become en-
listed, to the prejudice of the person accused as the author
of the injury.   It may be that the detail of the facts show-
ing the position of the body under the wheel of the car, and
the position of the foot in the frog of the switch, operated
unduly on the minds of the jurors, but we can not say such
evidence did not tend to corroborate other evidence in the
case, as to how and exactly where the accident occurred.
The record fails to show the materiality or relevancy of the
evidence furnished by the introduction of the shoe said to
have been worn by the deceased at the time of the accident.
The exhibition of the shoe was simply an appeal to the feel-

[Birmingham Furnace & Manufacturing Co. v. Gross, Adm'r.]

ings of the jurors. The objection to it ought to have been sustained. Trial courts should bear in mind that the damages given by the statute is a compensation for a pecuniary loss, and the amount is not left to the discretion of the jury. We have decided that under the Employers' Act of this State, neither exemplary nor punitive damages are recoverable.— *Orr's case,* 91 Ala. 652. "The law places the burden upon him who claims damages from another as compensation for a pecuniary loss, to furnish the *data* necessary to ascertain the extent of the loss with reasonable certainty, and failure in this, though he show a cause of action, can recover no more than nominal damages.—*Seaboard Mfg. Co. v. Abe Woodson,* manuscript, present term.

The exceptions and assignments of error are so numerous in this case we have not undertaken to do more than declare the general principles of law, which are applicable and control them all.

Reversed and remanded.