STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* FRANCIS JOHN BISCHERT, DEFENDANT AND APPELLANT.

No. 9707.
Submitted March 7, 1957. Decided March 27, 1957.
308 Pac. (2d) 969.

153

Mr. Edward T. Dussault, Missoula, for appellant.

Mr. Arnold H. Olsen, former Atty. Gen., Mr. Forrest H. Anderson, Atty. Gen., and Mr. Louis Forsell, Asst. Atty. Gen., Mr. Jay M. Kurtz, former Co. Atty., and Mr. Anthony F. Keast, Co. Atty., Missoula, for respondent.

Mr. Dussault, Mr. Forsell and Mr. Keast argued orally.

MR. JUSTICE CASTLES:

The appellant, Francis John Bischert, and his wife, Donna Marie Bischert, were charged together by information with the crime of manslaughter. On appellant's motion (defendant be-

154

low) they were tried separately. The appellant was convicted and this appeal is from the judgment of conviction and the order denying his motion for a new trial and from an order denying appellant's motion for a change of place of trial.

The information charges as follows:

"* * * the said defendants then and there being, did then and there have the duty to maintain their child, Melody Bischert, aged five months, to the extent of their ability, and the said defendants having the ability to maintain said child, did then and there at their home near Milltown, Montana, wilfully, wrongfully, unlawfully and feloniously kill the said Melody Bischert by failing, neglecting and refusing to provide her with the necessary food and attention to maintain her and sustain her life and by reason of such failure, neglect and refusal, the said Melody Bischert did then and there starve and die, * * *"

Appellant and his wife were the parents of five children, ranging in age from nearly six months to five years. They lived in a small modest home in West Riverside, Montana. The defendant was employed, had an income of about $110 per week, and was shown to be a normal adult being.

On the 6th day of March, 1956, the five and one-half month old baby of appellant died. Inspection of the body of the baby, Melody Bischert, by the mortuary officials caused them to take it to a doctor. The appellant gave permission for a post-mortem examination which tended to show death by starvation. Examination of the body also revealed a widespread skin disease allegedly caused by urine.

The charge of manslaughter was brought under R.C.M. 1947, section 94-2507, which reads:

"Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds:

"1. Voluntary upon a sudden quarrel or heat of passion.

"2. Involuntary, in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection."

Appellant specifies fifteen errors on this appeal. In his argument he divides the alleged errors into five parts. We shall discuss them in the same manner. These parts are: (1) Change of place of trial, (2) sufficiency of the information, (3) denial of appellant's motion for dismissal, (4) photographs should not have been admitted, and (5) that there was insufficient evidence to sustain the verdict.

Appellant filed his petition for change of place of trial on May 4, 1956, after having been charged by information on March 22, 1956. The petition was supported by an affidavit of some forty-five residents of Missoula County, that it was their belief defendant could not have a fair and impartial trial in Missoula County. It was also supported by eight daily newspaper articles concerning the case. In opposition to this, the county attorney filed several affidavits of newsmen and the undersheriff, to the effect that there was widespread publicity of the case, but that the public interest was due to the unusual nature of the case and not as to whether the appellant was guilty or innocent.

In this same connection, appellant urges that bias and prejudice of the trial court judge is reflected by his actions in setting bond at $3,000 in the first instance; and after pronouncing judgment and issuing a certificate of probable cause, in his refusal to fix any bond pending appeal. This matter was previously brought before this court in State ex rel. Bischert v. Burrell, Mont. 300 Pac. (2d) 521, and this court granted a writ of habeas corpus and fixed a bond pending appeal in the amount of $3,-500.

R.C.M. 1947, section 94-6901, provides:

"A defendant in an indictment or information may be awarded a change of place of trial upon his petition, on oath (or upon the oath of some credible person), setting forth that he has reason to believe that he will not receive a fair trial in the court in which such indictment or information may be pending, which petition shall state the facts upon which the same is based, for—

"1. That the judge is interested or prejudiced; or,

\* \* \* \* \* \*

"4. That the people of the county are so prejudiced against the defendant that he cannot have a fair trial; or,

"5. That it is impossible to obtain a jury in the county that has not formed an opinion, as to the guilt or innocence of the defendant, such as would disqualify them as jurors."

Appellant urges that the judge was prejudiced. He urges ██ ██ that the action of the judge in the matter of fixing bond demonstrates prejudice. Also that the fixing of a five-year sentence bore this out. The action of the trial judge, in refusing to fix a bond pending appeal, occurred after the verdict of the jury. It cannot be said that his prejudiced the appellant during the trial of the cause. A reading of the record does not show any bias or prejudice on the part of the court. If any can be found, it must be implied either from the amount of the bond in the first instance, which was $3,000, or from the court's refusal to set bond pending appeal. Certainly, in a manslaughter case, a $3,000 bond does not appear excessive and the actions of the judge after the verdict do not prejudice the defendant during the trial. Also the penalty of five years is certainly between the limits set of one to ten years by statute. We can see no basis for reversal based on subsection 1 of section 94-6901, supra.

Appellant urges that this case is governed by the case of State v. Dryman, 125 Mont. 500, 241 Pac. (2d) 821. In that case, evidence of inflammatory newspaper accounts, including aversions to "shenanigans" by this court, "Extras" with large red-letter headlines and editorialized reporting, were shown to have appeared. It was also shown that the sheriff had the prisoner moved to the state penitentiary for safe-keeping due to the "high feeling."

In the instant case, the newspaper stories appeared in the regular daily newspapers. They were not editorialized reports. They appear to be factually done and no inflammatory statements appear.

An application for a change of place of trial is addressed to

█ the sound discretion of the trial court. State v. Spotted Hawk, 22 Mont. 33, 55 Pac. 1026; State v. Davis, 60 Mont. 426, 199 Pac. 421; State v. Bess, 60 Mont. 558, 199 Pac. 426; State v. Hoffman, 94 Mont. 573, 23 Pac. (2d) 972.

A clear abuse of discretion must be shown, or the ruling of the trial court will not be disturbed. State v. Hoffman, supra.

The affidavits in the instant case merely state the opinions of █ the people subscribed thereon. This type of affidavit was found lacking in State v. Spotted Hawk, supra.

On *voir dire* examination of the jury, nine prospective jurors were excused for cause. The state used two peremptory challenges and the defendant used two also. Certainly the ease with which a jury was selected indicates no abuse of the court's discretion was had. See State v. Bess, supra; State v. Davis, supra; State v. Martin, 29 Mont. 273, 74 Pac. 725; State v. Hoffman, supra.

Appellant urges that the information was not sufficient. The information contains more than this court has held necessary in manslaughter cases. In view of the ruling in State v. Duncan, Mont., 305 Pac. (2d) 761, analysis of the information is unnecessary.

Appellant's third argument that the evidence produced by the state failed to prove the allegations of the information, failed to support a conviction of manslaughter, and failed to prove intent on the part of appellant, all of which should have sustained his motion for a dismissal, will be next considered.

The charge is one based upon the omission of a parent, here the father, by negligently withholding food, water and care from his child, he, having the means to supply them.

The parent entitled to custody of a child must give him support and education suitable to his circumstances. R.C.M. 1947, section 61-104.

That an omission to perform an act required by law can be the basis for manslaughter was held by this court in Territory v. Manton, 8 Mont. 95, 19 Pac. 387. In that case, defendant

allowed his wife to lie in the snow outside all night and on the next day failed to get medical attention until she died.

The state offered testimony tending to prove the circumstances ▉ of the parenthood, the home, the financial ability of the defendant and the cause of death of the six month old baby, Melody. The baby was born on September 17, 1955, and weighed five pounds, four ounces. Dr. Bridenstine, who delivered the baby, examined it again on October 7th, at which time it weighed five pounds, eight ounces and was normal. He was never called upon to examine it again. At the time of death, the baby weighed but five pounds, fourteen ounces or just ten ounces more than at birth. Evidence of the condition of the body was to the effect that it was covered with ammonia dermatitis or burns of pronounced extent, wasted in the extremities, thin through the skull. The doctor who conducted the post-mortem examination testified that everything was normal except that there was no subcutaneous fat, nor any other fat deposits and the stomach contained one ounce of undigested milk and no liquid except in the large bowel one-thirtieth ounce of yellow bile secretion. There was testimony that the entire lower bowel was devoid of contents. The cause of death was testified to as starvation, due to lack of food and water and not due to any inability of the child to absorb nourishment because of any organic defects. There was also evidence tending to show dirt and filth, as to the baby, its bed, and the home.

Testimony introduced by the state, if believed by the jury, would be sufficient to sustain the charges made.

That intent, to cause the death, was not necessary, and has been ruled upon in involuntary manslaughter cases many times. "* * * there must be a higher degree of negligence [in a manslaughter case] than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human

life, or in other words, a disregard for human life or an indifference to consequences.'' State v. Powell, 114 Mont. 571, 138 Pac. (2d) 949, 950, quoting from 26 Am. Jur., Homicide, section 210, page 299.

The trial court admitted in evidence state's exhibits 2, 3 and ■ 4, black and white photographs of the body of the baby, also state's exhibit 5, a colored slide taken after the post-mortem. The state used a projector and a screen in the darkened courtroom to show the colored slide to the jury. The identity of the baby had been clearly shown. Appellant urges that it was error to admit the pictures at all.

Dr. Buchanan stated that he did not need the picture to explain his findings, but he said that they were helpful. The prosecuting attorney dwelt in detail on each of the pictures over objections of appellant's counsel.

The law on the admissibility of photographs was stated by this ■ court in Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 61, 62, 37 Pac. (2d) 1025, 1029:

''* * * photographs stand on the same footing as diagrams, maps, plans, and the like, and as a general rule, whenever relevant to describe a person, place, or thing, they are admissible for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case.''

Photographs that are calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions. 20 Am. Jur., Evidence, section 729, page 609.

The charge here was failure to provide food. It should be pointed out that there was no charge of failure to provide medical care. That the photographs excite sympathy for the child and indignation and prejudice against the appellant is easily understandable. They show ghastly and gruesome looking sores or scars alleged to have been caused by dermatitis burns which in no way go to proof of starvation. When the purpose of an exhibit is to inflame the minds of the jury or excite the feelings

rather than to enlighten the jury as to any fact, it should be excluded. Wagner v. Chicago, etc. Ry. Co., 277 Ill. 114, 115 N.E. 201; Louisville etc. Co. v. Pearson, 97 Ala. 211, 12 So. 176; Peterson v. State, 227 Ala. 361, 150 So. 156; Ryan v. United Parcel Service, 2 Cir., 205 F. (2d) 362; 20 Am. Jur., Evidence, section 729, page 609.

In the Louisville case, supra, the court held it was error to admit in evidence a shoe worn by the deceased at the time of his death since it was an appeal to the feelings of the jurors. The court there said [97 Ala. 211, 12 So. 180]:

"Human feelings are easily excited by the description of great bodily injuries, or ghastly wounds, or the exhibition of objects which appeal to the senses. Sympathy or indignation, once aroused, in the average juror, readily becomes enlisted to the prejudice of the person accused as the author of the injury."

Here, where the pathologists was fully able to explain his findings without the use of the photographs, their purpose could only arouse the human feelings of the jury without aiding them in further understanding of the crime charged. This constituted error.

It is our opinion for these reasons that the photographs should not have been received in evidence and by reason thereof a reversal must be had.

We do not feel it necessary to further discuss the matter of the colored slide, taken after autopsy, and displayed in a darkened courtroom by the use of a projector. What we have already said on the subject of photographs applies equally to this exhibit.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY, ANGSTMAN and ADAIR, concur.