No. 80-407

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

MICKEY GENE HANSEN,

Defendant and Appellant.

---

Appeal from:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln.
Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

For Appellant:

Hood and Sherwood, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
William Douglas, County Attorney, Libby, Montana

---

Submitted on briefs: June 10, 1981

Decided: Sept. 15, 1981

Filed:  SEP 15 1981

Thomas J. Kearney
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant, Mickey Gene Hansen, appeals from a felony conviction entered in the District Court of the Nineteenth Judicial District, State of Montana, in and for the County of Lincoln.

Four issues are presented on appeal:

1. Whether the District Court erred in allowing the State to use, for the purposes of impeachment, statements made by the defendant when entering a guilty plea which was later withdrawn by the court.

2. Whether the District Court erred in admitting evidence, over defendant's objection as to relevancy, State's Exhibit No. 1, a mug shot photograph of defendant.

3. Whether the District Court erred when it refused to review police reports to determine if the reports contained exculpatory material and were, therefore, discoverable to defendant under section 46-15-302, MCA.

4. Whether the District Court erred in denying defendant's motion for a change of venue and motion for individually sequestered voir dire.

This is the second time this case has been before this Court. On a previous appeal, the case was reversed, albeit on other grounds. State v. Hansen (1980), ____ Mont. ____, 608 P.2d 1083, 37 St.Rep. 657. The facts of the case are contained in that opinion and will not be set forth here except where it is necessary to do so in discussing an issue that has been raised.

To discuss the first issue it is necessary to consider the background of the facts leading to the problem raised by it. Defendant was arrested on September 6, 1978,

and an information was filed charging him with sexual intercourse without consent. Defendant was arraigned on that charge, plead not guilty, and trial was set for January 10, 1979. On January 2, 1979, defendant, with counsel, moved to withdraw his plea of not guilty and enter a plea of guilty. During these proceedings, in response to questions from the court, defendant denied having sexual intercourse with the complaining witness. At that time, defendant's privately-retained counsel moved the court to withdraw as counsel, and the motion was granted. After further conversations in court, defendant admitted the sexual intercourse, and the court allowed his plea of guilty. The record shows that defendant's counsel then withdrew his motion to withdraw as counsel.

Sentencing was set for January 15, following consideration of a presentence investigation by the court. That presentence report contained the defendant's denial of any sexual intercourse with the complaining witness. The court, on January 15, 1979, because of the report, entered a not guilty plea for defendant and set the trial for February 6, 1979. On January 19, 1979, the District Court appointed a substitute counsel for defendant, and the trial was reset for March 6, 1979.

Following trial and guilty verdict on March 8, 1979, defendant was sentenced to forty years in the state prison and designated a dangerous offender for parole purposes.

As previously noted, this Court reversed that conviction. A new trial was set for May 6, 1980, which was continued until June 17, 1980, when defendant hired new counsel. New counsel presented motions for a change of

-3-

venue and to require the production of evidence on June 6, 1980. The change of venue motion was denied that day and a portion of the motion to produce the reports of investigating officers was denied later. Following trial, a guilty verdict was returned on June 18, 1980, and this appeal resulted.

In his first issue defendant contends the District Court erred in allowing the State to introduce, for impeachment purposes, statements defendant made while entering a guilty plea which was later withdrawn by the court. This issue directly concerns answers defendant gave to questions posed by the trial court when he pleaded guilty on January 2, 1979. It raises for the first time the problem of the use of the statements under Rule 410, Mont.R.Evid., which provides:

> "Offer to plead guilty; nolo contendere; withdrawn plea of guilty. Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer. This rule shall not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers where offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement."

At the second trial, following defendant's testimony that he did not have sexual intercourse with the complaining witness without her consent, the State used the statements made on January 2, 1979, for impeachment purposes, thereby showing that on a previous occasion the defendant had admitted to such sexual intercourse without consent. Our

-4-

question is whether such statements are admissible under the last sentence of Rule 410, Mont.R.Evid. The statements were made in connection with a withdrawn guilty plea and were used for impeachment purposes and so meet those requirements of the statute. The remaining question is whether or not the statements were "voluntary and reliable" within the meaning of the rule.

Hutto v. Ross (1976), 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194, is relied on by defendant. It should be noted that the federal rules of evidence do not allow use of statements except in perjury hearings, as contrasted to Montana's Rule 410, which allows the use of the statements for impeachment purposes as well as for a prosecution for perjury or false statements. In Hutto, the Court said:

> "The test is whether the confession was 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" 429 U.S. at 30, 97 S.Ct. at 203, 50 L.Ed.2d at 197.

In many ways the facts of Hutto are comparable to those here. In Hutto after entering a plea bargaining agreement with the prosecuting attorney with regard to a criminal charge under Arkansas law, the defendant, at the prosecutor's request, made a statement confessing to the crime of embezzlement. The confession was made in the presence of the defendant's attorney, who advised the defendant of his Fifth Amendment privilege and informed him that the terms of the plea bargaining were available regardless of the defendant's willingness to comply with the request for confession. Subsequently, the defendant withdrew the plea bargain, retained new counsel, and demanded a jury

-5-

trial. In the course of that trial the state court ruled that the defendant had confessed voluntarily and admitted his statement at the trial. The defendant was convicted.

Subsequent appeals took the defendant in Hutto through the state and federal court systems to the Supreme Court of the United States. The United States Supreme Court unanimously reversed the Circuit Court of Appeals and held that (1) the confession was not per se inadmissible in a criminal trial merely because it was made subsequent to and as a result of a plea bargaining agreement that did not call for such confession, and (2) that the confession was not involuntary since it had been made in the presence of defense counsel who had informed the defendant that the terms of the plea bargain were available regardless of his willingness to comply with the prosecutor's request for the confession. Such standards in Hutto are properly applicable here. See also, Jenkins v. Anderson (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86; Raffel v. United States (1926), 271 U.S. 496, 46 S.Ct. 566, 70 L.Ed. 1054.

In this case defendant was appearing for the purpose of changing a not guilty plea to a guilty plea pursuant to a plea bargain in which the prosecution would not seek an increased sentence under the persistent felony offender laws. At the January 2, 1979, proceeding, defendant was represented by private counsel. The court advised defendant of the charge against him, the maximum punishment that he could receive, and his right to a fair, speedy and impartial trial. At that stage of the proceedings, defendant apparently became confused or reluctant to proceed, or did not understand the concept of a lesser included offense referred

-6-

to by the trial judge. A recess was taken and upon recon-
vening, the court continued to advise defendant of his
rights. The following is an excerpt from the transcript of
the January 2, 1979, proceeding:

> "[DEFENSE COUNSEL]: Your Honor, at this point
> I believe that I am going to have to move to
> withdraw as counsel for this individual, in
> view of the fact that to proceed to a trial
> of this matter would incur a breach of my
> ethical obligations. The attorney/client
> privilege has dropped down to a point where I
> feel I couldn't represent him.
>
> "THE COURT: I understand, counsel and I am
> going to permit the withdrawal. I am going
> to appoint someone. This matter is set for
> trial--
>
> "THE DEFENDANT: Ya, I did it.
>
> "THE COURT: Now, Mr. Hansen, it is not the
> purpose of this proceeding to try to get a
> confession out of you. That isn't the
> purpose of it. But the purpose is to make
> sure you understand your rights fully and
> completely and that you aren't pleading
> guilty to a crime that indeed you feel you
> should have a defense to. And it puts
> counsel in a very, very strange place. And
> if you wish other counsel I will get you
> other counsel. Because sometimes people
> don't see eye to eye on these things. But it
> isn't the purpose of this type of proceeding
> to try to get you to confess. In other
> words, I really don't care. It doesn't make
> any difference to the Court, but I want to be
> sure that if indeed you enter a plea, as you
> have done, that the plea is informed and
> willing on your part and you are not going to
> say forever more 'I was railroaded.' That is
> the purpose of this thing. And not any other
> purpose. These are rights of yours under the
> United States Constitution that we are here
> dabbling with this morning, and your counsel
> knows and the Judge presumably knows them,
> and we don't want to extract from you a plea
> that you don't feel is proper. If I don't
> ask you these questions and establish in my
> own mind the fact that something did or did
> not occur then I am not doing my job, you
> see. And that is why I am asking you them.
> So if you do not agree with your counsel, say
> so. Because he is not embarrassed. He has
> been in this courtroom alot, in courtrooms
> before, and he understands and he knows. And
> perhaps you don't see eye to eye at this

stage of the game, and that is two different people in this world reacting in different ways to different things. So I am not trying to get you to say 'Yes, I did it' or 'No, I didn't.' I am just trying to ask you if in your own mind you felt that the offense was—in other words that you did the offense, that yes, indeed, the probability is that you are guilty.

"THE DEFENDANT: Yes, I am guilty.

"THE COURT: And if you had a trial by jury the probability would be very great that they would find you guilty. That is what I am trying to establish and that is why I am asking you these questions. And I don't want to embarrass you, but they must be there, so with that in mind do you wish to proceed, Mr. Hansen?

"THE DEFENDANT: Yes.

"THE COURT: Now, I did ask you in regard to this matter, you did have sexual intercourse with this person named?

"THE DEFENDANT: Yes.

"THE COURT: And that person was not your spouse?

"THE DEFENDANT: No.

"THE COURT: And she did not consent to such intercourse?

"THE DEFENDANT: No.

"THE COURT: Is there anything Mr. Hansen that—I have explained to you this matter of representation and I want you well represented. Is there anything about that at this time that you believe you want to make a statement to the Court about?

"THE DEFENDANT: No.

"THE COURT: And subject to the various explanations then you are freely and voluntarily entering your plea in this matter, is that right?

"THE DEFENDANT: Yes.

"THE COURT: I am going to accept it. I know sometimes it is difficult to understand counsel in some of these cases and they try to make themselves known, but we depend somewhat on the counsel—in fact we depend a

great deal on the counsel in these matters, Mr. Hansen. And because I know the character of your representation I know that he would try very hard to work in your interests, your best interests. But that is why I am asking you that question, because even the best lawyer occasionally doesn't quite see eye to eye with his client. You understand that?

"THE DEFENDANT: Yes.

"THE COURT: And you would feel you are on the same wave length now?

"THE DEFENDANT: Yes."

As previously noted, the above discussion took place before the first trial and was not used by the State until the second trial after defendant, in his direct testimony, testified that he had never had sexual intercourse with the complaining witness. With that, the State argues that the foundation for impeachment under Rule 410, Mont.R.Evid., was properly laid.

Defendant argues that this Court should adopt any one of the following four per se rules concerning the voluntariness of the questioned statements: (1) since these statements were given in connection with a plea that the court later allowed to be withdrawn, they were made involuntarily; (2) since the statements were given in connection with a plea bargain agreement, which is in effect a promise, the statements were involuntary; (3) since defendant was not warned by the trial court at the time of the change of plea of his Fifth Amendment privilege against self-incrimination, the statements were involuntary; and (4) since defendant's counsel withdrew prior to the time defendant made the statements, the statements were involuntary.

In reply, the State argues that we should examine the totality of the circumstances to determine whether the ques-

tioned statements were voluntary and reliable. It maintains

that, given the quality of the explanation of rights and

procedure by the trial judge, the complete lack of coercive

environment, and the lack of any inducement to defendant,

the statement was voluntary and reliable. Therefore, the

State contends, the statement was admissible to impeach the

testimony given by defendant at trial.

In determining the issue we again turn to Rule 410,

Mont.R.Evid., and to the commission comment on that rule.

The commission noted the difference between the federal rule

and the Montana rule:

> "This rule is identical to a version of
> Federal Rule 410 conditionally adopted by
> Congress. The condition was that the rule
> would be superseded by any amendment to the
> Federal Rules of Criminal Procedure inconsis-
> tent with the rule. Such an amendment was
> made in Rule 611(e)(6), Federal Rules of
> Criminal Procedure, which was later substi-
> tuted for this version of the rule. The
> Commission prefers the superseded version of
> the rule because it allows use of statements
> whether or not made under oath, on the
> record, or in the presence of counsel, and
> most important, for impeachment purposes.
> The Uniform Rule 410 (1974) is similar to the
> first sentence of the rule but does not
> include a provision similar to the second
> sentence of the rule.

> "This rule allows an accused to offer to
> plead guilty or nolo contendere or to with-
> draw such plea without either action being
> used against him in any subsequent trial.
> This is intended to aid the plea bargaining
> process, under similar policy considerations
> given to offers of compromise under Rule 408,
> and to allow highly prejudicial evidence to
> be excluded under considerations that the
> reasons for offering to plead or withdrawing
> pleas of guilty and nolo contendere would not
> be understood by a jury and would almost pre-
> clude a fair trial. The second sentence of
> this rule is added to insure that the accused
> does not abuse this rule and contradict
> earlier statements. See Harris v. New York,
> 401 U.S. 222 (1971). The trial court is
> required to insure that the statements were
> 'voluntary and reliable' and if contradicted,

> the statements may be introduced for the purposes of impeachment or prosecution for perjury.

> "Existing Montana law has not specifically dealt with the problem of offers to plead or withdraw pleas, although a plea of guilty that is not withdrawn is admissible in subsequent proceedings. Sikora v. Sikora, 160 Mont. 27, 33, 499 P.2d 808 (1972). Therefore this rule is new to Montana law. It should be noted that Montana law does not allow pleas of nolo contendere; however, such a plea is included in the rule because it has been recognized by Montana courts in a case where such a plea was entered in federal court and was relevant to a state case. State ex rel. McElliot v. Fousek, 91 Mont. 457, 461, 8 P.2d 795 (1932)."

It is obvious from the above comment that the commission chose to allow certain statements given in connection with guilty pleas and plea negotiations to be used for impeachment purposes. Rule 410 is an exception to the general rule that admissions by a party-defendant are admissible. This exception, according to the comment, was granted to encourage the use of plea bargaining agreements. But, the rule was not designed to allow a defendant to abuse the plea bargain process with no penalty.

Here defendant is no stranger in court, although reading his testimony at the hearing on January 2 one would think it had been his first time in court. The trial court carefully and extensively questioned defendant on the voluntariness of the plea, his understanding of the charge, the consequences of the plea and the factual basis for his plea. When defendant went back on the plea bargaining arrangements against his counsel's wishes, counsel requested the court to withdraw as counsel because of a breach of professional ethics that he felt was violated. The court stated it would get defendant a new attorney, and defendant then voluntarily admitted that he had committed the act.

Clearly defendant abused the plea bargaining process here, and we sustain the decision of the trial judge in allowing the statement to be introduced.

In reply to defendant's four per se rules against the totality of the circumstances argued by the State, the State notes that it was defendant here who moved the District Court to allow him to withdraw his not guilty plea and to plead guilty, and to move the District Court to accept the plea of guilty, defendant must establish that the guilty plea was being knowingly and voluntarily entered. The court must thoroughly explore the voluntariness on the part of a defendant prior to accepting a guilty plea. See section 46-12-204, MCA.

In State v. Azure (1977), 175 Mont. 189, 573 P.2d 179, this Court noted that the best method to establish voluntariness is on a factual basis and that this should be done at the time of the entering of the plea. Here the trial judge did all in his power to establish a factual basis for the plea. Defendant admitted that he had sexual intercourse with the complaining witness, that she was not his spouse and that the sexual intercourse had taken place without her consent. A recent case of this Court, State v. August Lee White (1981), ____, Mont. ____, ____ P.2d ____, ___ St.Rep. ____ (No. 80-351, decided August 31, 1981), noted that State v. Azure, supra, requires the record to disclose the defendant has full understanding of the crime to which he pleads. Absent such understanding, this Court will not presume that the plea was made "with an under-standing of the charge." The State agrees that Azure requires a defendant have full knowledge of the charge

-12-

admitted by pleading guilty.

We are satisfied that the present case meets the requirements of Azure and that the disparate outcomes of this case and Azure are mandated by the different circumstances of each case. Finally we note that, as previously discussed, the record in this case demonstrates that defendant was sufficiently informed to enter a plea that was "voluntary with understanding of the charge," section 46-12-204, MCA. In Azure the defendant was not so informed. We find no merit to defendant's contention here that he was not properly informed and sustain the trial court's admission of the dispute evidence.

The next issue raised is whether State's Exhibit No. 1, a photograph of defendant, was properly admitted by the trial court over defendant's objection.

Defendant cites State v. Bischert (1957), 131 Mont. 152, 308 P.2d 969, for support of his position. It states:

> ". . . photographs stand on the same footing as diagrams, maps, plans and the like, and as a general rule, whenever relevant to describe a person, place, or thing, they are admissible for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case.
>
> "Photographs that are calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions." 131 Mont. at 159, 308 P.2d at 973.

Here, the State introduced a photograph taken at the time of defendant's arrest. The exhibit was a mug shot of defendant in an unkept, messy state. Defendant contends that the photo was irrelevant and did not go to showing any material fact.

Bischert was a homicide case involving a small child.

-13-

The fact situation there is not applicable to the fact situation here. In this case the photo was taken at the time of defendant's arrest. It was admitted as part of the identification testimony of the victim and was corroborative of the victim's ability to identify defendant both at trial and at the time of the incident. A view of the photograph certainly does not arouse anyone's passion or prejudice, nor is it inflammatory. Therefore, we find no merit to this issue.

The next issue for review is whether the trial court erred in refusing to review police reports to determine if they contained exclupatory material and were, therefore, discoverable to the defendant under section 46-15-302, MCA. Prior to trial defendant filed a motion to produce, pursuant to section 46-15-302, MCA, asking to inspect and copy "all papers, documents, oral or written statements . . ." in the hands of the prosecutor. At a hearing on the motion the State took the position that all police reports were work product and not discoverable. Defendant relies on section 46-15-302(2), MCA, which provides in part:

> "(2) . . . This subsection does not apply to the work product of the prosecution, which is documents drawn up by law enforcement officials for internal communications and law enforcement officers' field notes, except that any exculpatory information contained in such documents or notes must be produced."

Defendant argues that because the offense was alleged to have occurred some twenty-one months prior to defendant's request at the second trial, because several officers, including Woods and Spain, were no longer employed by the law enforcement officials of Lincoln County, and because there was no independent record of their investigation, defendant was unable to determine whether their statements

-14-

contained any exculpatory material. He, therefore, requested the court to review these police reports and determine if there was discoverable material in them. He alleges that the court denied the production of the police reports merely on the prosecutor's assertion that they contained no exculpatory matters.

At the omnibus hearing on June 6, 1980, defendant requested the court to review the police reports to determine if there were inconsistencies in the victim's early statements and her trial testimony. The court agreed to do so and did. The record does not indicate that defendant focused on the testimony of Spain and Woods or made any written motion for the court to so review those reports. For that reason, the issue is not properly before this Court. The matter cannot be used to put the trial court in error if it was not brought specifically to the court's attention.

The final issue before us is whether the court erred in denying defendant's motion for a change of venue and a motion for individually sequestered voir dire. Defendant filed a motion for a change of venue with a supporting affidavit on May 30, 1980, which was heard and denied on June 6, 1980. The motion was renewed, heard and denied on June 16, 1980. Both of these motions raised the same issues of pretrial publicity and the publication of information which clearly would not have been admissible at trial.

This Court recently set forth the change of venue issues which are addressed here as going to the sound discretion of the court. See, State v. Bashor (1980), ____ Mont. ____, 614 P.2d 470, 37 St.Rep. 1098. In State v.

Board (1959), 135 Mont. 139, 143-144, 337 P.2d 924, 927, we set forth the test as follows:

> "Our court looks for a chain reaction. It starts with the basic premise that the accused is entitled to a fair trial. Next it checks the publicity complained of, as to its contents and more important, as to its total effect upon the 'fair trial right.' . . . Finally, it objectively considers the end result—was a fair trial denied as a result of the publicity and its effects? . . ."

We have examined carefully the allegations given for the requested change of venue and find they fail to establish any possibility of jury prejudice due to pretrial publicity. As noted by the State, only two prospective jurors, Mr. Cook and Mrs. Seekins, responded that they had read or heard anything about the case in the newspaper or on the radio. There were two Misters Cook on the prospective jury panel and both Misters Cook and Mrs. Seekins were eliminated by peremptory challenge and therefore did not serve on the trial jury. In addition, Mr. Stebans, who was selected as an alternate juror, said that he had read some newspapers articles but was not prejudiced. However, the alternate juror did not sit as a juror in the deliberations. Therefore, no prejudice to defendant has been shown.

The judgment of the District Court is affirmed.

_____
John Conway Harrison
Justice

-16-

We concur:

_____
Chief Justice

_____

_____
Justices

-17-