## HENRY STEHR V. STATE OF NEBRASKA.

FILED JANUARY 16, 1913.   No. 17,539.

1. **Homicide:** CRIMINAL NEGLIGENCE. One charged with the support and control of a child of tender years, suffering with frozen feet, who negligently and wilfully fails or refuses to obtain for it necessary medical aid, thereby causing its death, may be guilty of such criminal negligence as to render him guilty of manslaughter.

2. ———: ———: QUESTION FOR JURY. The degree of negligence in such a case that would make a man criminally responsible can hardly be defined. It is not a slight failure in duty that would render him criminally negligent, but a great failure of duty undoubtedly would. The line between the two extremes is a question that must be left, to a great extent, in each individual case, to the common sense of the trial jury. It is for them to determine whether or not the degree of failure of duty is, in fact, criminal.

3. ———: ———. For a parent having special charge of an infant child to so culpably neglect it that death ensues as a consequence of such neglect is manslaughter, although death or grievous bodily harm were not intended.

4. ———: ———. If the parent has not the means for the child's nurture, it is his duty to apply to the public authorities for relief, and failure to do so is itself culpable neglect, wherever there are public authorities capable of affording such relief.

5. **Criminal Law:** INSTRUCTIONS: REASONABLE DOUBT. An instruction defining a reasonable doubt which commences with the statement that "a reasonable doubt is that state of the case which, after the entire comparison and consideration of all of the evidence, and instructions of the court, leaves your minds in doubt and uncertainty as to the guilt of the defendant," is not rendered prejudicially erroneous by the inclusion of the words "and instructions of the court."

6. ———: ———. Other instructions examined, commented upon in the opinion, and found to be without reversible error.

7. ———: REFUSAL OF INSTRUCTIONS. Where the trial court has fairly instructed the jury upon the defendant's theory of his case, a refusal of other instructions requested by the defendant is not reversible error.

8. Assignments of error in the admission of evidence examined, and found to be without merit.

9. Evidence examined, its substance stated in the opinion, and *held* sufficient to sustain a verdict of manslaughter.

ERROR to the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed.*

*H. F. Barnhart, M. D. Tyler, William V. Allen* and *William L. Dowling,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton,* contra.

BARNES, J.

The plaintiff in error, hereafter called the defendant, was convicted in the district court for Madison county of the crime of manslaughter, by negligently causing the death of his stepson, a child about four years of age. He was sentenced to the penitentiary for a term of from one to ten years, and to reverse the judgment of the district court has brought the case here by a petition in error.

It is his first contention that the evidence is insufficient to sustain the verdict. From a careful reading of the bill of exceptions it appears that the defendant is a native of Germany, and prior to his removal to this country resided in the city of Hamburg; that on the 6th day of April, 1909, he was married to one Minnie Loco, who was at that time the mother of an illegitimate child about two years of age, called "Kaurt;" and who, after the marriage, was known as Kaurt Stehr; that in July, 1910, the defendant left his wife, his infant child, and his stepson Kaurt in Hamburg and came to Norfolk, Nebraska; that afterwards, and in the month of October, defendant sent

for his wife and child, with the understanding that the stepson was to be left with defendant's mother in Germany. For some reason, not fully explained, the defendant's mother declined to keep the child, and it was brought, by the defendant's wife, to this country. Shortly after her arrival at Norfolk defendant rented a house and established a home in that city, the family consisting of his wife, their infant child, and stepson, Kaurt. It appears that while in Germany, and after they came to this country, Kaurt was to some extent afflicted with bed wetting, and for that weakness defendant was in the habit of punishing the child frequently and quite severely; so much so that complaint was made against him in Germany, and his friends and neighbors in this country remonstrated with him, and informed him that unless he desisted the child might become idiotic. It should be stated that defendant was without means, except his earnings as a day laborer, and the help furnished him by his wife in laundry work. On the 31st day of December, 1910, there was a severe storm in the vicinity of Norfolk, which is described as a blizzard, and that night the weather was very cold. Defendant allowed the fire to go out altogether, although he had a small supply of coal; and, as stated by him, some time during the night he discovered that Kaurt had wet the bed; that the bedding was frozen stiff; that the room was full of frost; that snow had drifted through the crack of the door and through a broken window pane; and the bedding on all of their beds was frozen stiff. Notwithstanding this situation, defendant built no fire, and, as stated by him, he turned the bedtick, on which Kaurt slept, over, and again placed the child in the bed, alone, where he lay until the next morning. Shortly after this, and as early as the 5th day of January following, it was discovered that the child's feet had been frozen, and had begun to show signs of discoloration. Mrs. Stehr stated that the child's feet looked gray and somewhat green in spots. Defendant thereupon applied hot water and dressed the feet with cloths, saturated with

vaseline. No physician was consulted or called until the 16th day of January following, at which time the child's feet were so badly decomposed that the stench arising therefrom had become unbearable. Defendant's wife then went to a merchant, with whom they were trading, and inquired for a German doctor. Doctor Pilger was recommended, and he called to see the child, but declined the case because the defendant had no money. Doctor Verges, another German physician, was called, who on the same evening visited the child, and also declined the case, but recommended that the city physician be notified of the situation. On the following day Doctor Tashjean, the city physician, who is a skilful surgeon, called at the defendant's house, examined the child, found a gangrenous condition of its feet, and informed defendant that amputation was absolutely necessary. Meanwhile, one of the county commissioners, who was active in securing assistance for the poor, furnished defendant with a supply of coal and other necessaries, and arranged for the amputation. The child was taken to the home of Mrs. Kleutz, a professional nurse, and on the following day the operation was performed by Doctors Tashjean and Salter, and everything possible was done for the relief of the child. It was found, however, that sepsis or blood poisoning had developed to such an alarming extent that a recovery was impossible, and on the 22d day of the month the child died.

The indictment charged the defendant with murder in the first degree, which, of course, included the lesser crimes of murder in the second degree and manslaughter. The district court instructed the jury to find the defendant not guilty of first or second degree murder, and the cause was tried and submitted to the jury on the theory that defendant, being charged with the duty to control and support the deceased child, wilfully and negligently caused and permitted its life to be endangered after having knowledge that its feet were badly frozen, and wilfully failed and neglected to summon medical aid or make known its condition, thereby causing its death.

Stehr v. State.

It must be observed that the question actually submitted to the jury was whether or not defendant was criminally negligent in failing to provide medical care for his stepson after he discovered the frozen condition of of the child's feet. It is contended that defendant is an ignorant German, unable to speak the language of this country, was without means to procure medical assistance, and therefore was not responsible for his neglect. The evidence shows, however, that he was a fairly intelligent man; that he was surrounded by his friends and neighbors, all of whom could speak both German and English; that he failed to mention the child's condition, or inform them of his necessities. His own testimony shows that for ten or eleven days he saw the child's feet turn from gray to purple, from blue to green and black, and saw its flesh rotting and dropping away, yet made no effort to procure medical aid until the odor of the rotting flesh became unbearable. It seems idle to assert that he was so ignorant as not to realize the necessity for calling a physician. The degree of negligence in such a case that would make a man criminally responsible can hardly be defined. It is not a slight failure in duty that would render him criminally negligent, but a great failure of duty undoubtedly would. The line between the two extremes is hard to define, and is a question that must be left, to a great extent, in each individual case to the common sense of the trial jury. It is for them to determine whether or not the degree of failure of duty is in fact criminal. As we view the evidence, the jury had a sufficient basis for finding the defendant guilty of such criminal negligence as would amount to manslaughter.

Defendant predicates error on the court's instructions from paragraphs 7 to 17, inclusive. We find that paragraph 7 explains the law as declared in section 43, ch. 34, Comp. St. 1911. It incorporates a part of that section, and, as we view it, is not erroneous. By paragraph 8 of the instructions the jury were informed that "to do an act wilfully is to do it voluntarily." No specific objec-

tions are urged to this instruction. Paragraph 9, defining negligence in the care and control of any child, cannot be rightfully criticised, and the general criticism made by counsel is not available as a ground of error. Defendant was charged with the legal duty of seeing to it that the child's life was not endangered. If he realized the condition of the boy's feet and for ten days failed to call a physician, or if he negligently refused to ascertain the condition of the boy's feet in time to call a physician, then the jury would be justified in finding him guilty of criminal negligence. Paragraph 10 of the instructions informed the jury that a failure to provide for the child under such circumstances is gross negligence; and that it was also gross negligence, if he did not have the means to employ medical assistance himself, in not seeking it from others. Paragraph 11 of the instructions informed the jury that ignorance of the laws providing for the care of poor persons would not excuse defendant from the omission of his duty to procure the necessary medical attention for the deceased child. In such a case, where the party charged is unable to supply the necessary succor, he ceases to be responsible, but this responsibility is not divested in cases where poor-laws exist. In such case the person owing the duty should report the case to the public authorities for their relief. In 1 Wharton, Criminal Law (11th ed.) sec. 484, it is said: "Independently of these statutes, it may be generally stated that for a parent, having special charge of an infant child, to so culpably neglect it that death ensues as a consequence of such neglect, is manslaughter if death or grievous bodily harm were not intended; and murder if there was an intent to inflict death or grievous bodily harm. To constitute murder there must be means to relieve and wilfulness in withholding relief. If the parent has not the means for the child's nurture, his duty is to apply to the public authorities for relief; and failure to do so is itself culpable neglect wherever there are public authorities capable of affording such relief."

It is claimed, however, that, by instruction 11, the jury were told that it was their duty to determine whether or not there was such omission of this duty as shows heedlessness and indifference by the defendant; and it is argued that this instruction is fallacious because its effect was to tell the jury that the defendant was bound, at his peril, to know that there were poor-laws applicable to cases of this kind. This is an erroneous construction of the instruction, for it merely states the old maxim that ignorance of law excuses no one. The defendant was charged with the duty to see to it that the child's life was not endangered; and it is apparent that he could have performed that duty by informing his neighbors of its condition. The testimony shows that, on the day when information was first given to the Norfolk merchant, medical attention and aid of all kinds were immediately forthcoming.

It is strenuously argued that instructions 7, 8, 9, 10 and 11 are in conflict with instruction 14. By this instruction the jury were told that the defendant should be convicted of manslaughter, if they found, beyond a reasonable doubt, that he realized the condition of the child's feet for such a length of time, previous to calling a physician, that by calling such physician the child's life might have been saved; or that he was culpably negligent in not taking steps to know and realize the condition of the child's feet. We are of opinion that there was no conflict in the instructions.

It is also argued that the words, "and instructions of the court," found in instruction 17, defining a reasonable doubt, rendered the whole paragraph erroneous. It should be observed that this case is one where it was the duty of the court by proper instructions to define the degree of negligence which would render the defendant guilty. Therefore it was the duty of the jury to take into consideration the instructions of the court on that question in order to enable them to reach a proper verdict.

Error is also predicated on the refusal of the court to

give certain instructions requested by the defendant. As we view the record, the trial court carefully covered all of defendant's contentions, and the refusal of the request tendered by the defendant was not reversible error.

Finally, it is contended that the court erred in the admission of evidence showing the existence of bruises, scars and marks on the body of the child. It appears that very little of that evidence was objected to by the defendant. In fact, the witnesses for the defense described the condition of the child's body, and the jury were instructed that evidence of that kind should only be considered in determining whether the defendant's attitude toward the child was such as might cause him to be negligent in his failure to secure medical aid after he ascertained that the child's feet were badly frozen.

It is also stated that the newspapers of Madison county were filled with sensational accounts of defendant's treatment of the child at the time of its death, to defendant's prejudice. It appears, however, that the trial took place some nine months after the child died, and it is not apparent that the newspaper statements complained of, in any manner, influenced the jury in arriving at their verdict.

In conclusion, it may be said that the defendant is a man of at least average intelligence; that the people who advanced him the money with which he paid for the passage of his wife and children lived within a stone's throw of his house, he knew them in Germany, and they had helped him; that at every point of the compass his nearest neighbor was a German with whom he could counsel and advise; that they were a thrifty, charitable people, and a word from him would have brought all of the assistance that he needed; and it appears that, as soon as his wants were made known, medical assistance and material aid were immediately brought to him.

As stated by counsel, this is a difficult case, and suggests a seasonable application for executive clemency; but, as we view the record, it contains no reversible error,

and this court can grant the defendant no relief. The judgment of the district court is

AFFIRMED.