# STATE v. CHARLES A. LESTER.[1]

November 6, 1914.

Nos. 19,000—(13).

**Manslaughter — culpable negligence of physician.**

1. A medical man, or a person assuming to act as such, will be held guilty of "culpable negligence" within the meaning of G. S. 1913, § 8612, subd. 3, defining manslaughter in the second degree as homicide committed without design to effect death, "by any act, procurement or culpable negligence" not constituting a higher crime, where he has exhibited gross incompetency or inattention, or wanton indifference to his patient's safety.

**Same — indictment.**

2. An indictment under this statute need not allege knowledge on defendant's part of probability of consequences from the acts or omissions charged; nor is it necessary to charge defendant's duty in the premises, nor set up a specific standard of duty, nor to allege "culpable" or any other degree of negligence *eo nomine*, nor set out defendant's acts in any other than general terms and as ultimate facts.

**Judicial notice.**

3. The court takes judicial notice that X-ray machines sometimes inflict serious burns.

**Indictment sustained.**

4. An indictment against a physician, under the statute cited, for manslaughter in the second degree, committed in connection with the operation of an X-ray machine, sustained as against a demurrer, on the ground that the facts charged were not stated with sufficient certainty to, and did not, constitute a public offense.

Defendant was indicted by the grand jury of Douglas county of the crime of manslaughter in the second degree. He was tried before Parsons, J., who overruled defendant's demurrer to the indictment,

---

[1] Reported in 149 N. W. 297.

Note.—Negligent homicide by physician, see note in 61 L.R.A. 287.

Liability of physician for injuries resulting from electrical or X-ray treatment, see notes in 28 L.R.A.(N.S.) 262; 43 L.R.A.(N.S.) 734.

and at the request of defendant certified to this court the question whether the court erred in overruling the demurrer of defendant or in refusing to sustain any of his objections to the indictment.

*Lyndon A. Smith,* Attorney General, and *John C. Nethaway,* Assistant Attorney General, for the state.

*George L. Treat* and *Durment, Moore & Oppenheimer,* for defendant.

PHILIP E. BROWN, J.

Defendant demurred to an indictment accusing him of the offense of manslaughter in second degree, on the ground that the acts or omissions charged were not stated with sufficient certainty to, and did not, constitute a public offense. The court below overruled the demurrer and certified the case here.

The indictment was found under G. S. 1913, § 8612, subd. 3, declaring manslaughter to be of this degree when committed without any design to effect death, "by any act, procurement or culpable negligence" not constituting a higher crime. Omitting formal parts, it alleged that defendant:

"Without authority of law, but without a design to effect her death, did feloniously use and employ upon the body of one Ruth Nass, an electrical machine or instrument commonly known as an X-ray machine (a more particular description of said instrument or machine being to said grand jury unknown), for the purpose of taking an X-ray picture of the hip of the said Ruth Nass for the sole use and purpose of said Charles A. Lester, with her consent extracted from her upon his assurance that the exposure of such X-ray would do her no harm, and she relying upon his assurance as a medical man and not otherwise, said Charles A. Lester did then and there attempt to take such picture of subjecting the body of said Ruth Nass to the rays of said machine, and did then and there turn and apply said X-ray upon the body of the said Ruth Nass in and over the region of her right hip, the said machine being a dangerous instrument, except when operated by a skilful manager it was not necessarily dangerous, which danger the said C. A. Lester knew, or in the exercise of the care required under the circumstances he should have known, and said Charles A. Les-

ter did then and there place the tube of the said X-ray unreasonably close to the body of her, the said Ruth Nass, and disregarding the duty he owed her, he did negligently and carelessly fail to give her, during the time of such exposure to such X-ray as aforesaid, such proper and requisite attention as was requisite and proper to prevent burning her, and did operate such X-ray in an unskilful manner and did keep her body so exposed for an unreasonable length of time, thereby inflicting upon the body of her, the said Ruth Nass in the region of the right hip as aforesaid, a mortal burn and injury known as an X-ray burn, from which mortal burn so caused as aforesaid, she, the said Ruth Nass, died."

This court has frequently declared that an indictment must set out the complete criminal offense charged, and every essential element must be alleged directly and certainly; the omission of an allegation without which a criminal offense would not be described being fatal. State v. MacDonald, 105 Minn. 251, 117 N. W. 482. And the essential, ultimate facts alleged must not be consistent with innocency. State v. Erickson, 81 Minn. 134, 83 N. W. 512. Furthermore, the indictment must protect accused from a second prosecution for the same offense. State v. Tracy, 82 Minn. 317, 84 N. W. 1015. It cannot, however, be overturned by technicalities which do not prejudice the substantial rights of defendant. State v. Staples, 126 Minn. 396, 148 N. W. 283.

The only question necessary to be considered in applying the foregoing tests is whether the criminality of defendant's acts as constituting the crime of homicide by "culpable negligence" is sufficiently alleged.

Numerous definitions of this term may be found. 2 Words & Phrases, 1780; 1 Id. (2d Series) 1174. But these would be of little, if any, value in the premises, for the term does not appear in the indictment. Moreover, culpable negligence, that is criminal negligence, is largely a matter of degree, and, as has well been said, incapable of precise definition. Whether it exists to such a degree as to involve criminal liability is a question that must be left, to a great extent, to the common sense of the jury. Hampton v. State, 50 Fla. 55, 64, 39 South. 421; Stehr v. State, 92 Neb. 755, 139 N. W. 676, 45 L.R.A.

(N.S.) 559, Ann. Cas. 1914A, 523, 22 Am. & Eng. Enc. (2d ed.) 810. But not every careless or negligent act whereby death ensues comes within the statute, and something more must appear than the essentials necessary to impose civil liability for damages. 21 Cyc. 766. When considered as the basis of a charge of manslaughter against a medical man, or person assuming to act as such, culpable negligence exists where he exhibits gross lack of competency, or inattention or wanton indifference to the patient's safety; which may arise from his gross ignorance of the science or through gross negligence in either its application or lack of proper skill in the use of instruments. ' Where, however, he does nothing that an ordinarily skilled and careful practitioner might not do, and death results merely from an error of judgment or accident, no criminal liability attaches. Hampton v. State, supra, decided under a statute like ours; Ferguson's Case, 1 Lewin, 181, Reg. v. Ellis, 2 Car. & K. 470; note 124 Am. St. 330; 22 Am. & Eng. Enc. (2d ed.) 810; 21 Cyc. 769. "Gross" as here used is intended to convey the idea of recklessness with regard to the safety of others, or, as expressed by Mr. Justice Holmes, in Com. v. Pierce, 138 Mass. 165, 52 Am. Rep. 264, "foolhardy presumption."

The failure to allege knowledge on defendant's part that his acts involved probability of serious consequences to the deceased, is not fatal to the indictment, the defect, if any, in this regard, being cured by the presumption of contemplation of probable consequences. Com. v. Pierce, supra. Neither was it necessary to allege defendant's duty to deceased under the circumstances, nor to set up a specific standard by which his acts might be measured, these being matters of law. If, then, the facts alleged sufficiently show such incompetency or inattention or indifference to the safety of deceased as has been indicated as necessary to give rise to criminal liability, the indictment must be upheld, though it charges neither "culpable" nor any other degree of negligence *eo nomine,* nor defendant's acts in other than general terms and as ultimate facts. To state more as to the latter would be to plead the evidence, which is not required, and "negligence" prefixed by adjectives could not aid the former, unless the facts stated justified

such expressions (State v. MacDonald, supra), in which event they would be surplusage.

We must take judicial notice that X-ray machines sometimes inflict serious burns, and the indictment characterizes the instrument used as dangerous unless skilfully handled and presumptively known by defendant to be such, notwithstanding which he placed it too close to his subject, and also failed during an excessive exposure to give her the attention requisite to prevent injury. These allegations import criminal negligence and the questions raised thereby are for the jury. State v. Hardister, 38 Ark. 605, 42 Am. Rep. 5. We sustain the indictment, though it is not a model one.

Order affirmed.