STATE, Respondent, v. POWELL, Appellant.

(No. 8367.)

(Submitted June 11, 1943. Decided June 22, 1943.)

[138 Pac. (2d) 949.]

572

Cause submitted on Briefs of Counsel.

*Mr. John J. Greene,* for Appellant.

*Mr. R. V. Bottomly,* Attorney General, *Mr. Fred Lay,* First

574

Assistant Attorney General, and *Mr. Wilbur P. Werner,* County
Attorney of Glacier County, for Respondent.

MR. JUSTICE ERICKSON delivered the opinion of the court

The defendant was convicted of manslaughter as a consequence of the death of Charles Jorgenson, who was run over by the defendant. The defendant has appealed.

The cause was tried upon the theory of involuntary manslaughter, and the only question we concern ourselves with on appeal is the sufficiency of the evidence to sustain that theory.

At about 10 o'clock on the night of November 15, 1941, the defendant, while driving his automobile across the intersection of Main Street and Central Avenue in the city of Cut Bank, struck a pedestrian, Charles Jorgenson, who was crossing the street and who, as a result of the injuries sustained, subsequently died. Defendant stopped his automobile before entering the intersection. It had been raining during the evening, but the testimony on the part of the state indicated that the visibility was good. The street lights were on. One witness on behalf of the state testified that the defendant's car started quickly after stopping at the intersection and that it quickly crossed the intersection. The automobile lights were on and the windshield wipers were working. The testimony is that at the moment of the impact defendant was traveling at a speed of approximately 15 miles per hour. He testified that he was looking straight ahead and watching the traffic on the main street, and there is no testimony to the contrary. He had not been drinking. His testimony is that he did not see the deceased before the automobile struck him. The brakes of the automobile were in good shape, and he applied them when he felt the impact, although there is testimony that the brakes were applied rather slowly. The automobile dragged the deceased for some 42 feet before the car was stopped. The defendant's testimony

is that he got out and ascertained that the deceased had been struck and injured, and that as soon as the deceased was dragged from under the car and a doctor summoned, he (defendant) after requesting his wife to remain there, drove his car away as it was obstructing traffic.

The Montana statute (sec. 10959, Rev. Codes) defines involuntary manslaughter as follows: ''The unlawful killing of a human being, without malice. It is of two kinds: * * * 2. Involuntary, in the commission of an unlawful act, not amounting to felony; *or* in the commission of a lawful act which might produce death, *in an unlawful manner, or without due caution or circumspection.*''

This court has never defined what is meant by the italicized ██ ██ portion above, that is, what degree of negligence is necessary to impose criminal responsibility. This question, however, is well settled in other jurisdictions. The general rule is stated in 26 Am. Jur., page 299, as follows: ''The authorities are agreed, in the absence of statutory regulations denouncing certain acts as criminal, that in order to impose criminal liability for a homicide caused by negligence, there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard for human life or an indifference to consequences.''

When we apply this rule, we can find no evidence of criminal negligence of the character which has not the proper regard for human life. There is not such negligence as is contemplated by section 10959, supra. There is no evidence that at the time of the accident the defendant was not looking straight ahead where, in the exercise of due care, he should have been looking. In fact the only evidence on this point is the testimony of the

defendant in which he states that he was looking where he was driving and saw nothing to indicate the presence of the deceased.

We must conclude that there is a failure of proof of the requisite criminal negligence to sustain the conviction. The judgment is reversed and the cause remanded with direction to dismiss the information.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON, MORRIS and ADAIR concur.