STATE OF MONTANA, Plaintiff and Respondent, *v.* MICH-
AEL R. MALLY, Defendant and Appellant.

No. 10253.

Submitted October 9, 1961. Decided December 6, 1961.

366 P.2d 868.

Frank Burgess, Butte (argued orally), Harry C. Alley, Butte, for appellant.

Robt. J. Holland, Co. Atty., Forrest H. Anderson, Atty. Gen., James J. Sinclair, Asst. Atty. Gen. (argued orally), for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

The defendant, Michael R. Mally, was convicted of involuntary manslaughter following trial in Silver Bow County under an information charging manslaughter.

The defendant's conviction was based upon his failure to provide medical care for his wife, Kay Mally, after she had been found injured in their home.

Prior to her injury, Kay Mally was in poor physical condition suffering from chronic hepatitis, biliary cirrhosis, osteoarthritis, and obesity. She also had small areas of cystic degeneration in the brain and was an alcoholic. In 1956 her physician, Dr. Peterson, diagnosed the condition of the liver disease and the kidney disease as being terminal, i. e., fatal.

Kay Mally's injury which occurred Tuesday evening, May 26, 1959, evidently fractured both humeri (large bones of the upper arm). After the injury defendant picked up his wife and placed her in the bedroom where she remained without medical aid from Tuesday evening to Thursday morning, May

28, 1959. No help was sought or given, although at all times either the defendant or his brother, John Mally, remained in the house.

The reason that the defendant's brother did not seek medical aid during this period was brought out by his testimony, when he stated the reason Kay Mally was not brought to the hospital sooner was because he did what the defendant told him to do.

Thursday morning the defendant called Dr. Peterson, who after examining the patient informed the defendant's brother that her condition was critical. An ambulance was called and Kay Mally was taken to the hospital. The ambulance driver testified that upon his arrival he found Kay Mally unconscious. He stated she was badly bruised around the head and face, the right side of her face was swollen and the right eye was black. Her arms were bruised and swollen.

These statements were corroborated by the X-ray technician and a nurse who observed Kay Mally after she was admitted to the hospital. The nurse testified Kay had bruises on her arms and head with swelling and she was unconscious.

The efforts of Kay Mally's doctor to save her life were to no avail. She died June 3, 1959, without regaining consciousness. The cause of her death was diagnosed as degeneration of the kidneys. She had suffered severe shock as a result of the fracture of both arms, and such shock caused the degeneration of the kidneys which in turn caused her death.

At the beginning of the State's case in chief and at the close of the State's case, the defendant made a motion requesting the court to require the State to elect between involuntary manslaughter and voluntary manslaughter as the information charged only manslaughter. The motions were denied.

The jury, being charged that they could only find the defendant guilty of involuntary manslaughter and not voluntary, returned a verdict of guilty, and the defendant was sentenced to a term of three years in the state prison.

Defendant on this appeal alleges the following specifications of error:

1. Error of the court in denying the defendant's motion to elect.

2. Error in denying defendant's motion to dismiss.

3. Error in denying defendant's motion to acquit.

4. That the verdict is contrary to the law, in that the evidence fails to show the commission of a crime, or a causal connection between the act of defendant and death.

5. That the verdict is not supported by the evidence.

The defendant contends that the court's denial of the motion to elect was prejudicial and was error affecting the substantial rights of the defendant.

The purpose of such a motion is two-fold. The defendant is entitled to know before he makes his defense what specific act is relied on for a conviction so he can properly defend the charge. People v. Davis, 175 Mich. 594, 141 N.W. 667. State v. Coomer, 105 Vt. 175, 163 A. 585, 94 A.L.R. 1038. Also, the motion is to prevent a situation wherein the conviction is a matter of choice, each juror being left to select the particular act upon which he bases his decision, which could result in a defendant being found guilty although the jurors have not agreed as to any specific act. State v. Duncan, 82 Mont. 170, 266 P. 400.

The motion to elect is proper only under limited circumstances. In State v. Coomer, supra [163 A. 587], the court in considering a motion to elect stated: ''Where one offense is charged and the evidence shows separate and distinct transactions, and either of them would support the charge in the complaint, the state is required to elect upon which it will rely for conviction. [Citing cases.] The time when the state should be compelled to make its election is within the discretion of the court.''

This court has previously held that an election at the close

of the State's case is sufficient. State v. Harris, 51 Mont. 496, 154 P. 198.

The defendant's contention of error based on the court's refusal to grant a motion to elect is without merit for several reasons.

First, the evidence does not disclose separate acts of the defendant which would support the charge in the information.

Second, at the close of the State's case, when the defendant again introduced his motion to elect, this colloquy occurred between the court and the defendant.

The Court: "The court is of the opinion that the jurors at this time, from the evidence introduced and the questions proposed and all witnesses' statements that the act charged is failure to provide medical attention." The court at that time also informed the defendant's counsel that it would instruct solely on involuntary manslaughter.

This action by the court was sufficient to negate any reason for a motion to elect. The defendant was informed as to what act he must defend against. Also, as the court did instruct the jury that they could not convict of voluntary manslaughter but only involuntary manslaughter, the jury was not free to select an act upon which to base their conviction.

Third, in State v. Robinson, 109 Mont. 322, 328, 96 P.2d 265, 267, the same issue as is here presented was before the court. The court held that the denial of the motion to elect was proper for the reason that it should have been apparent to the defendant what crime was charged against him. The court stated:

"Manslaughter was the only crime charged in the information. What we have said as to the bill of particulars is pertinent on this assignment. But we will add that the proof submitted at the trial determined the nature of the crime committed. Such proof was sufficient to prove the crime of involuntary manslaughter; but insufficient to prove the crime of voluntary manslaughter; hence the evidence produced furnished

the defendant with the identical information which he was seeking by the motion to elect. In other words, the state had already shown that it was prosecuting the defendant for involuntary manslaughter because of the character of the evidence offered. Defendant at no time had any reasonable ground to assume that his defense would have to be other than for involuntary manslaughter. The court properly denied the motion to elect.''

If it was obvious to the court what crime the state was relying on in the instant case, it should have also been apparent to the defendant. The defendant did not have reasonable grounds to assume his defense would be other than involuntary manslaughter.

Defendant's remaining specifications of error can be consolidated into the issues of whether the verdict was contrary to law, and whether the verdict was supported by the evidence.

Turning to the issue of whether the verdict was contrary to law.

The degree of negligence necessary to impose criminal liability for involuntary manslaughter was considered by this court in State v. Powell, 114 Mont. 571, 576, 138 P.2d 949, 950, wherein the court stated:

''The Montana statute * * * [section 94-2507, R.C.M. 1947] defines involuntary manslaughter as follows: 'The unlawful killing of a human being, without malice. It is of two kinds: * * * 2. Involuntary, in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, *in an unlawful manner, or without due caution or circumspection.'*

''This court has never defined what is meant by the italicized portion above, that is, what degree of negligence is necessary to impose criminal responsibility. This question, however, is well settled in other jurisdictons. The general rule is stated in 26 Am.Jur. page 299, as follows: 'The authorities are agreed, in the absence of statutory regulations denouncing

certain acts as criminal, that in order to impose criminal liability for a homicide caused by negligence, there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard for human life or an indifference to consequences.' "

Other jurisdictions have held that the failure to obtain medical aid for one who is owed a duty is such criminal negligence as would constitute manslaughter. Stehr v. State, 92 Neb. 755, 139 N.W. 676, 45 L.R.A.,N.S., 559; Commonwealth v. Breth, 44 Pa.C.C. 56.

In People v. Beardsley, 150 Mich. 206, 113 N.W. 1128, 1129, 13 L.R.A.,N.S., 1020, the defendant, a married man, was prosecuted for failure to provide medical aid for a woman with whom he had an arrangement. During the course of the evening she took morphine and subsequently died. The court although reversing because there was no duty owing to the woman by the defendant quoting from 21 Am. & Eng.Enc.Law (2d ed.) p. 197, stated: " 'If a person who sustains to another the legal relation of protector, as husband to wife, parent to child, master to seaman, etc., knowing such person to be in peril, willfully or negligently fails to make such reasonable and proper efforts to rescue him as he might have done, without jeopardizing his own life, or the lives of others, he is guilty of manslaughter at least, if by reason of his omission of duty the dependent person dies.' "

In State v. Bischert, 131 Mont. 152, 308 P.2d 969, the defendant was charged with manslaughter. The information charged the defendant and his wife with the killing of their child by neglecting and refusing to provide the necessary food to sustain the infant's life. Although the conviction was re-

versed because of prejudicial photographs, this court held that the failure to provide the necessities of life to one whom is owed a duty is a sufficient basis on which to predicate and sustain a conviction for a negligent homicide, i.e., involuntary manslaughter.

In Territory v. Manton, 8 Mont. 95, 19 P. 387, 393, the defendant and his wife after an evening of drinking walked home. The wife evidently passed out and the defendant left her, although she was poorly clad and he was within easy calling distance from the house. He was convicted of manslaughter. The court held that a legal duty exists between husband and wife, and if the husband withholds necessaries from his wife and she dies as a result; it is manslaughter. The court quoted from 2 Bishop, Criminal Law, § 689, to this effect:

" 'If the act is one of negligence not clearly showing danger to life, yet, if death follows, the offense is only manslaughter; whereas, if the exposure or neglect is of a dangerous kind, it is murder. Ordinarily, if a husband should withhold necessaries from his wife, and she dies, it will be only manslaughter, since this act is not so immediately dangerous to life as the other. Whether death caused by neglect is murder or manslaughter is made to depend on the nature and character of the neglect'."

 Therefore, from the authorities quoted heretofore, the conclusion is inescapable that the failure to obtain medical aid for one who is owed a duty is a sufficient degree of negligence as to constitute involuntary manslaughter provided death results from the failure to act.

However, the defendant strenuously asserts that as a prerequisite for a conviction of involuntary manslaughter based on a failure to provide medical aid, the state must prove the ability on the part of the defendant to furnish such aid.

In Stehr v. State, 92 Neb. 755, 139 N.W. 676, 678, 45 L.R.A., N.S., 559, the defendant was charged with negligently causing

the death of his stepson because he failed to provide medical aid. The defendant was a man without means, he called two doctors who refused the case because of defendant's lack of funds. The court in affirming the conviction stated: ''In such a case, where the party charged is unable to supply the necessary succor, he ceases to be responsible, but this responsibility is not divested in case where poor laws exist. In such case the person owing the duty should report the case to the public authorities for their relief.'' The court also quoted from 1 Wharton, Criminal Law (11th ed.) § 484, '' 'If the parent has not the means for the child's nurture, his duty is to apply to the public authorities for relief; and failure to do so is itself culpable neglect wherever there are public authorities capable of affording such relief.' ''

There are provisions in our statutes under which the poor may obtain medical aid. See section 71-308, R.C.M.1947.

■ Therefore, it is the opinion of this court that the State in prosecuting for manslaughter because of the failure to provide medical aid is not required as an element of their proof to show the ability on behalf of the defendant to furnish such aid. If a defendant could not obtain aid, either through normal procedure or the poor laws, this is a matter for his defense.

Finally, in order to convict a person for a homicide the negligent act must be the basis of the death. In State v. Ramser, 17 Wash. 2d 581, 136 P.2d 1013, 1015, the court stated:

''When a person is charged with manslaughter by reason of negligence on his part, whether it be the doing of some act, or his failure to do something he should have done, or whether the negligence is cast upon him as a matter of law by reason of his violation of some statute, there must be causal connection between the negligence and the death of the person involved, so that it can be said that the act done or omitted was a proximate cause of the resultant death.'' (Citing cases.)

■ Therefore, it must appear from the evidence that the

608

defendant's failure to obtain medical aid was the proximate cause of the death of his wife.

It appearing that the verdict was not contrary to law, the question remains whether the verdict was supported by the evidence.

Prior to an examination of the evidence, the rules of law governing conflicting evidence should be considered. In State v. Messerly, 126 Mont. 62, 69, 244 P.2d 1054, 1057, the court stated:

"Disputed questions of fact and the credibility of witnesses will not be considered on appeal. Determination of such matters is within the province of the jury, and so long as there is substantial evidence to support the verdict, it cannot be disturbed on appeal."

The evidence establishes that the defendant and Kay Mally were husband and wife and lived together as such. That Kay Mally was found in an injured condition on the floor in the defendant's home and was placed in the bedroom where she remained from Tuesday evening to Thursday morning. During this period of time, as she lay there with only the extended arm of death as a companion, she received but one glass of water. There was no attempt made by the defendant to obtain medical aid or to further comfort her.

Defendant's brother while testifying for the State as an adverse witness, because of prior conflicting statements, stated that both he and the defendant asked Kay Mally if she wanted medical aid but she consistently refused aid stating she would be all right.

We are not unmindful of the case of Westrup v. Commonwealth, 123 Ky. 95, 93 S.W. 646, 6 L.R.A.,NS., 685, wherein a defendant was exonerated on a manslaughter charge based on the failure to provide medical aid for his wife. His wife insisted she could manage childbirth unassisted and the defendant acknowledged her request. However, the minute he discovered her peril he obtained aid, but to no avail.

We are aware that the large majority of homicide cases involving a failure to provide medical aid involve a parent-child relationship. This is undoubtedly due to the fact that a person of mature years is not generally in a helpless condition. However, fact situations do arise, such as the instant case, wherein it is apparent that an adult is as helpless as the newborn. The record is replete with evidence that Kay Mally could not have consciously or rationally denied medical aid.

The defendant's brother, the same man who testified that Kay Mally refused aid, stated that Kay Mally was in the same condition when Dr. Peterson arrived Thursday morning as she was in the interim. Dr. Peterson testified that upon his arrival he had found her in a semi-comatose condition. Also in answer to a question he stated:

"Q. Doctor, when you were called to the Mally home, you were told that she had been in this comatose condition for two days. Who related that to you? A. Again, I believe it was her brother-in-law, (John) but I can't state with any degree of certainty."

This testimony, the previously discussed physical condition of Kay Mally, and her condition upon arrival at the hospital was sufficient for the jury to conclude that Kay Mally during the period she remained in the defendant's home after her accident was indeed a helpless woman and solely at the mercy of her husband.

Therefore, the remaining problem is whether the defendant's neglect in summoning medical aid was the proximate cause of his wife's death.

In the eyes of the criminal law, if a person hastens death, such person is considered the cause of the death. Though a person may be at the threshold of death, if the spark of life is extinguished by a wrongful act, it is sufficient for a conviction.

In State v. Smith, 73 Iowa 32, 41, 34 N.W. 597, 601, the court stated: "Life at best is but of short duration, and one

who causes death ought not to be excused for his act because his victim was soon to die from other causes, whatever they may be.'' See also, People v. Brown, 62 Cal.App. 96, 216 P. 411, People v. Moan, 65 Cal. 532, 4 P. 545.

■ Therefore, if Michael Mally's failure to provide medical aid for his wife hastened her death, then his failure to act was the proximate cause of the death.

It is conceded that Kay Mally, because of her previous physical condition, when her injury occurred and both arms were fractured, was at death's door. From the medical testimony, it is apparent that even with immediate medical aid Kay Mally in all probability would not have survived. However, the medical testimony does establish that the failure to summon medical aid did hasten Kay Mally's death.

The testimony given by Dr. Newman is as follows:

''Q. Dr. Newman, in taking the postmortem and doing the autopsy on Kay S. Mally, did you have any professional opinion as to whether her neglect of treatment caused or contributed to her death? A. Well, I certainly think it hastened it; the shock must have become very difficult if not impossible to treat to bring her out of shock because she had been in it so long.''

Therefore, it appearing that there is sufficient evidence in the record to support a conviction for involuntary manslaughter, and it further appearing that the verdict is not contrary to law, the conviction of Michael R. Mally for involuntary manslaughter is sustained.

MR. JUSTICES ADAIR, DOYLE, CASTLES and JOHN C. HARRISON concur.