180 So.2d 396 (1965)
Christopher GIAN-CURSIO, Appellant,
v.
STATE of Florida, Appellee.
Bernard M. EPSTEIN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 64-514, 64-561.
District Court of Appeal of Florida. Third District.
November 16, 1965.
Rehearings Denied December 9, 1965.
*397 Sam Daniels, Zinn & Fine, Manners & Amoon, Miami, for appellants.
Earl Faircloth, Atty. Gen., and Herbert P. Benn, First Asst. Atty. Gen., for appellee.
Before HENDRY, C.J., and CARROLL and SWANN, JJ.
CARROLL, Judge.
The appellants, who are chiropractic physicians, were informed against in Dade County, charged with manslaughter by having caused the death of one Roger Mozian through culpable negligence.[1] The defendants were tried together and convicted. Dr. Gian-Cursio was sentenced to confinement for a period of five years, and sentence was suspended as to Dr. Epstein. Motions for new trial filed by defendants were denied, and they appealed. The two appeals were consolidated for presentation in this court.
Appellants contend the evidence was insufficient to support the verdicts and judgments of conviction. In addition, appellant Gian-Cursio, in a second point in his brief, claims errors at trial which he lists as allowing introduction of certain inadmissible evidence and improper impeachment of a witness, and prejudicial remarks by the prosecutor in argument. We have examined the voluminous record of the proceedings on the trial, and on consideration thereof and of the briefs and arguments we conclude that the contentions of the appellants are without merit. In our view the evidence adequately supports the verdicts and judgments against the appellants, and we find no reversible error in the rulings or action of the trial court as referred to in the second point in the brief of appellant Gian-Cursio.
The record discloses that one Roger Mozian died of pulmonary tuberculosis in May of 1963. His disease had been diagnosed in 1951 by Dr. Matis, a New York medical *398 doctor in whose charge he remained for some ten years, during which his tuberculosis continued dormant or arrested. An X-ray examination of Mozian by Dr. Matis in January of 1962 showed his disease had become active. Dr. Matis recommended hospitalization and drug treatment, which Mozian refused. Mozian went under the care of Dr. Gian-Cursio a licensed chiropractic physician in the State of New York, who practiced Natural Hygiene. Dr. Gian-Cursio was advised that Mozian was suffering from tuberculosis. His treatment of the patient was without drugs and by a vegetarian diet, interspersed with fasting periods. Evidence was in conflict as to length of fasting. There was testimony that on occasion the fasting continued 14 days. Dr. Epstein was a licensed chiropractic physician of Florida. Acting with Dr. Gian-Cursio and under his direction, Dr. Epstein operated a home or establishment for patients in Dade County, Florida. Beginning in the winter of 1962, on the advice of Dr. Gian-Cursio, Mozian went there and was treated by the appellant doctors, in the manner stated above. Eventually, in May of 1963 he was hospitalized, where through other doctors he was given drugs and other approved treatment for the disease but within a matter of days he died, on May 16, 1963. There was testimony that the treatment given Mozian was not approved medical treatment for one with active tuberculosis, and that had he been treated by approved medical methods and given available drugs his disease could have been arrested or controlled. From the evidence the jury could, and no doubt did conclude that the treatment afforded by the appellants advanced rather than retarded the patient's tuberculosis infection and caused his death, and that their method of treatment of this tuberculosis patient amounted to culpable negligence as it has been defined in the decisions of the Supreme Court of this State. In State v. Heines, 144 Fla. 272, 197 So. 787, 788, the Florida Supreme Court reversed an order quashing a manslaughter information which charged a chiropractic physician with causing the death of a patient who suffered from diabetes, by culpable negligence through treatment which included taking him off insulin. After citing and discussing the earlier Florida decision in Hampton v. State, 50 Fla. 55, 39 So. 421, and the cases of State v. Lester, 127 Minn. 282, 149 N.W. 297, L.R.A. 1915D, 201, and State v. Karsunky, 197 Wash. 87, 84 P.2d 390, the Florida Supreme Court said:
"We need add little more to what has been written in the three cases cited to show how one who is proven to have offended as detailed in the information has violated the law against manslaughter. If a person undertakes to cure those who search for health and who are, because of their plight, more or less susceptible of following the advice of any one who claims the knowledge and means to heal, he cannot escape the consequence of his gross ignorance of accepted and established remedies and methods for the treatment of diseases from which he knows his patients suffer and if his wrongful acts, positive or negative, reach the degree of grossness he will be answerable to the State."
In the earlier case of Hampton v. State, supra, the Florida Court went into the matter at greater length, and what they held there is applicable to the situation presented by this record. In that case the Court said (39 So. at 424):
"We do not agree with this contention of the able counsel for the defendant. The law seems to be fairly well settled, both in England and America, that where the death of a person results from the criminal negligence of the medical practitioner in the treatment of the case the latter is guilty of manslaughter, and that this criminal liability is not dependent on whether or not the party undertaking the treatment of the case is a duly licensed practitioner, or merely assumes to act as such, acted with good intent in administering *399 the treatment, and did so with the expectation that the result would prove beneficial, and that the real question upon which the criminal liability depends in such cases is whether there was criminal negligence; that criminal negligence is largely a matter of degree, incapable of precise definition, and whether or not it exists to such a degree as to involve criminal liability is to be determined by the jury; that criminal negligence exists where the physician or surgeon, or person assuming to act as such, exhibits gross lack of competency, or gross inattention, or criminal indifference to the patient's safety, and that this may arise from his gross ignorance of the science of medicine or surgery and of the effect of the remedies employed, through his gross negligence in the application and selection of remedies and his lack of proper skill in the use of instruments, or through his failure to give proper instructions to the patient as to the use of the medicines; that where the person treating the case does nothing that a skillful person might not do, and death results merely from an error of judgment on his part, or an inadvertent mistake, he is not criminally liable. 22 Am. & Eng. Ency. Law (2d Ed.) pp. 810, 811, and authorities there cited."
We reject as unsound the arguments of appellants that because their treatment conformed to generally accepted practice of drugless healers and was rendered in good faith in an effort to help Mozian, it was proper and could not be found to constitute criminal negligence. That, and appellants' further argument that their treatment of Mozian could not have been tested through testimony of medical doctors, is answered adversely to appellants by Hampton v. State, supra. In Hampton it was held to be immaterial "whether or not the party undertaking the treatment of the case is a duly licensed practitioner, or merely assumes to act as such, acted with good intent in administering the treatment, and did so with the expectation that the results would prove beneficial." Additionally, appellants argue that proximate cause was not established. The issue of proximate cause was one for the jury, and the record furnished substantial evidence upon which that issue was submitted for jury determination.
Under the applicable law as enunciated in the cited Florida cases, the trial court was eminently correct in denying defendants' motions for directed verdict and in submitting the issue of their alleged culpable negligence to the jury. No reversible error having been made to appear, the judgments in appeals numbered 64-514 and 64-561 should be and hereby are affirmed.
Affirmed.
NOTES
[1] § 782.07, Fla. Stat., F.S.A., provides as follows: "The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this chapter, shall be deemed manslaughter, and shall be punished by imprisonment in the state prison not exceeding twenty years, or imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousand dollars."