THE STATE OF MONTANA, Plaintiff and Respondent, v.
L. C. CROCKETT, Defendant and Appellant.

No. 11148.
Submitted November 10, 1966. Decided December 22, 1966.
Rehearing denied January 17, 1967.
421 P.2d 722.

Jeffrey J. Scott (argued), Valerie W. Scott, Billings, for appellant.

Forrest H. Anderson, Atty. Gen., William G. Sternhagen, Asst. Atty. Gen. (argued), Helena, John L. Adams, Jr., County Atty. (argued), Billings, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Defendant-appellant was charged by an Information with the crime of procuring a woman for immoral purposes on two counts. Count I charged appellant with receiving money for procuring for immoral purposes one Dixie Lea Moses, and plac-

ing her in the custody of Charles Holly. Count II charged appellant with placing Dixie Lea Moses for immoral purposes in a house with the intent that she engage in immoral acts and engage in prostitution. The jury returned a guilty verdict on both counts. Appellant was sentenced to serve two consecutive five year terms in the state penitentiary. Appellant then made motions for a new trial and arrest of judgment which were denied. This appeal is from the verdict and judgment.

On August 18, 1965, one Holly was drinking in the southside bars of Billings, Montana. In the early morning hours he went to the Tampico Cafe to seek some "female companionship." He didn't have any cash and a check wasn't acceptable, so he could not obtain a girl. At this point the appellant stopped Holly and said he knew a girl who would accept Holly's check. They got into appellant's car and went to a row of apartments at 2530 First Avenue South. Appellant directed Holly to apartment No. 7. Holly was to tell the girl that appellant had okayed the check.

Dixie invited Holly into Apartment No. 7. After Holly gave Dixie appellant's instructions concerning the check, she said that her services were available for $20.00. Holly furnished a check blank. Dixie filled out the check for $20.00, inserted her name as payee, and dated it August 18, 1965. Holly signed the check and delivered it to her. The prostitution then took place.

Later, appellant attempted to cash Holly's check at a local bank. He was refused because the check was not endorsed by Dixie. He returned to the bank with her endorsement on the check, and at the teller's request, he also endorsed the check.

Appellant set forth some six issues raised on the appeal.

"(1) The defendant, a Negro, did not receive a fair trial because of the prejudicial remarks of the prosecutor, in light of the nature and circumstances of the case.

"(2) As to Count I of the Information, the State failed to prove the charge, there was a fatal variance between the charge

laid and the proof adduced, and the court should have granted defendant's motion for a directed verdict.

"(3)  As to Count II of the Information, the state failed to prove all the essential elements of the crime charged, and the court should have granted defendant's motions for a directed verdict; the State's handling of the witness Dixie Lea Moses prejudiced the defendant and deprived him of a fair trial.

"(4)  The trial court committed reversible error in allowing the prosecution to put certain matters into evidence, over objection of defendant's counsel.

"A.  The court should not have admitted exhibit 2, the check written by Charles Holly; to do so was prejudicial error.

"B.  The court erred in allowing a witness to use prejudicial and inflammatory language, over objection of defendant's counsel.

"C.  The court committed prejudicial error in allowing the prosecution to question Dixie Lea Moses in redirect examination on matters outside the scope of the cross-examination.

"D.  It was prejudicial error for the Court to allow the prosecution to call Charles Holly on rebuttal to explain away the discrepancies in his testimony, over objection of defendant's counsel.

"(5)  The Court erred in granting the State's motion for a continuance at the close of its case; the defendant was prejudiced thereby and the judgment should be reversed.

"(6)  The Court committed prejudicial error in refusing to give to the jury instructions offered by defendant."

In the first specification of error, appellant argues he was materially prejudiced and deprived of a fair trial because the county attorney used the words "colored man" twice in his opening statement. Appellant alleges that the combination of his being a Negro, the prostitute being white, and the charge being one of moral turpitude made the remarks prejudicial. The county attorney at one point mentioned that Holly was "approached by this colored man, Mr. Crockett." Then, a little

later he said that the bank cashier "will testify that a colored man came to her, offered her a check * * *."

At the times the county attorney used this phrase in explaining what he intended to prove appellant raised no objection. We fail to see how he could have successfully objected. Reference to appellant's color in the context presented and the particular words used did not tend to incite any racial prejudice, but merely were used to identify the person referred to. See 23A C.J.S. Criminal Law § 1105, p. 199, 45 A.L.R.2d 308.

Appellant argues in the second specification of error that the State did not prove the charge found in Count I of the Information. Count I charges appellant with unlawfully receiving $20.00 "for procuring for immoral purposes, and placing in the custody of one Charles Holly, one Dixie Lea Moses, a female person * * *." The relevant statute, section 94-4114, R.C.M. 1947, requires that three elements be proved: procuring Dixie Lea Moses, placing her in custody of Charles Holly for immoral purposes, and receipt of the money.

An examination of the three elements is necessary. Holly testified that appellant told him of a girl who would accept his check. Appellant drove him to Dixie's apartment and gave Holly instructions for Dixie to accept the check. Dixie testified that appellant himself said Holly's check was good.

Dixie testified that appellant told her that she was going to work for him as a prostitute; that she objected and he hit her. She said she did work for him, was not allowed to leave the apartment, and that she was required to turn over all the money earned to appellant. He in turn would buy any clothing or food necessary for her existence. She testified that Holly's check was turned over to appellant. Later she endorsed the check for appellant so he could cash it.

Contradictory testimony was given by the appellant. However, disputed questions of fact and the credibility of the witness will not be disturbed on appeal for they are within the province of the jury so long as there is substantial evidence to

support it: State v. Mally, 139 Mont. 599, 608, 366 P.2d 868. There is sufficient evidence to support the finding that appellant did procure and place Dixie for immoral purposes; that Dixie merely obtained the check from Holly as an agent of the appellant, and that appellant did receive the money from the prostitution. Only when the testimony is so inherently incredible so that no reasonable mind ought to accept it as true will the jury verdict be disturbed on grounds of insufficient evidence. State v. Pippi, 59 Mont. 116, 124, 195 P. 556.

Appellant was charged in Count II with unlawfully placing Dixie Lea Moses in a house for immoral purposes with the intent that she engage in prostitution. This charge is based on section 94-4110, R.C.M.1947. Appellant contends that the State failed to prove that appellant placed Dixie for immoral purposes and intended her to live a life of prostitution.

Concerning specification 3 we find there is sufficient proof to establish the two elements of the charge. The landlady testified that appellant rented three apartments and that he paid the rent for all three. Police Detective Schaffer testified that Dixie lived in Apartment No. 7, and appellant lived in Apartment No. 1. He saw them together and coming out of each other's apartment.

Dixie gave important testimony concerning the placing and intent: Dixie lived in Apartment No. 7 from July to October, 1965. Her sister was told by appellant that if she didn't work for him she had to leave. Dixie's sister left but appellant made Dixie stay. Appellant informed Dixie that she was going to work for him as a prostitute. She objected and he hit her. From the day she started living at Apartment No. 7 and throughout the several months following, she was a prostitute charging for services rendered not less than $10.00. She gave all the money received, including Holly's check, to appellant.

She further stated that appellant gave her the following instructions: She was to sit in the apartment window to get

customers. If anyone came ·to the door asking if she was a "working girl," she was to say "yes" and to state the price.

It was understood that appellant would receive all the money Dixie earned. On several occasions appellant struck Dixie for not making enough money. The transaction between Holly and Dixie was confirmed by Dixie to have taken place in Apartment No. 7 at 2530 First Avenue South, Billings, Montana.

She testified on cross examination that appellant called her a "whore" and that she knew what he was talking about when they had their conversation about working. Also, she said she was not free to leave the apartment because appellant constantly drove around the block in surveillance. Several times she tried to sneak out of the apartment. Appellant followed her, caught her, beat her up, and then made her return to Apartment No. 7, where she again engaged in prostitution.

Dixie's testimony, as seen is very important to Count II. She is no less a competent witness because she was engaged in prostitution. State v. Pippi, supra. Proof of the elements of the crime along with the credibility of the witnesses were for the jury's consideration. There is substantial evidence to support the verdict, and it will not be disturbed. State v. Mally, 139 Mont. 599, 608, 366 P.2d 868.

The next specification of error concerns itself with certain trial procedures to which appellant alleges prejudice. On the first day of trial at approximately 4:30 p. m., the State had the bailiff call to the witness stand Dixie Lea Moses. As explained above, she was an important factor in proving Count II, and as hereinafter set forth, she was absent from the courtroom and could not be found. The county attorney made a motion for a continuance until the next morning in hopes of locating Dixie. Appellant contends that section 93-4910, R.C.M. 1947, demands that the motion for continuance should have been made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence had been used to procure it. Admittedly, no affidavit was filed.

The trial court's day usually ends at 5:00 p. m. After arguments were made on the motion in the court chambers, the court said: "Well, in view of the fact that it is now 4:45 and that there will be an immediate adjournment I will overrule the defendant's objection and we will return into the courtroom and recess until tomorrow morning." We cannot see any prejudicial error by the action of the court.

■ Appellant further contends that the state in questioning Dixie went outside the scope of the cross-examination. For purposes of discussing this issue, it is sufficient to summarize the relevant part of the lower court's record. Appellant's cross-examination of Dixie included the questions concerning her jail term ending February 1, 1966, and her activities from that date to the time she testified in the present case. Appellant spent a great part of the cross-examination attempting to show that police coercion was the reason for her testifying. This attempt was not successful, even though it was brought out that she had spent three months in the county jail on a prostitution charge. Dixie testified on cross-examination that she had remained in jail an additional month past her release date and the appellant having opened this avenue he gave the State an opportunity on re-direct to explain this testimony.

On re-direct examination, Dixie explained that her jail sentence expired January 2, 1966, but she remained in jail until February 1, 1966, for her own protection from appellant. Then the activities of Dixie from the date she was released from jail to the time of the trial were received in evidence. The re-diect examination was on evidence elicited on the cross-examination, and was clearly within the scope of such cross-examination.

■ Mr. Holly was recalled as a witness to explain and correct the date on which he and Dixie engaged in the act of prostitution. On direct examination he said the sexual intercourse took place on August 20, 1965. On rebuttal he said the date was August 18, 1965. Appellant contends that to allow this rebuttal

testimony was prejudicial error. Section 94-7201, subd. (3) R.C.M.1947, providing an orderly procedure for the trial of criminal cases, states that after the prosecution and defense have been offered "The parties may respectively offer rebuttal testimony only, *unless the court, for good reason, in furtherance of justice, permits them to offer evidence upon their original case.*" Emphasis added. The lower court did not abuse its discretion in permitting Mr. Holly the opportunity to correct his testimony.

Appellant in specification 5 argues that police treatment of Dixie at the time of the trial deprived appellant of a fair trial. To place this issue in proper perspective we must start a few days prior to the particular police activities in question. The State needed Dixie's testimony to sustain Count II. Without it, that count would have failed. But she was not present at the beginning of the trial. On re-direct examination she explained why she was absent: A few days before the trial appellant took her to a local motel. He directed her not to use her own name, so she registered in the name of Linda Nelson. Appellant paid the rent, and at the time Dixie checked into the motel appellant said: "You are not going to appear [at the trial] are you?" She replied "No."

On the first day of the trial, Dixie left the motel at about 11:00 a. m. She visited a few friends and frequented several bars. Around 10:30 p. m., two plain clothes policemen located Dixie. They brought her to the police station. She then wanted to "go out on the town." To insure Dixie's safety and her presence at the trial the next day the police accompanied her to several bars, where she had about ten bottles of beer. She paid for some of the beer, and the police bought her some. Dixie then spent the night in jail.

On cross-examination by appellant's counsel, she said she understood she was not arrested and that if she wanted, she could have left of her own volition. Further, she said she was testifying of her own free will.

We cannot see how appellant was deprived of a fair trial due to this police conduct. This whole phase of the trial was introduced to the jury by appellant's counsel on cross-examination of Dixie. She testified she was not being forced to give evidence, and that no promise, offers of reward or inducements of any kind had been offered to her if she would testify. She stayed in jail that night for her own protection, fearing reprisals from appellant because she was going to testify against him.

There was no complaint heard from Dixie of any police irregularity. Rather, the record is abundant with her testimony showing her complete co-operation with the police department.

In addition, it should be noted that appellant's attempt to hide Dixie and the intimidations of her not only warranted police protection of a witness who was to testify, but also could be grounds for prosecution of appellant under section 94-1705, R.C.M.1947.

Specification 6 assigns error to the refusal of the court to give certain instructions on circumstantial evidence. As noted above, there was an abundance of direct evidence presented by the State's witnesses to prove the elements of both counts. Instructions on circumstantial evidence are required only in a case depending entirely on circumstantial evidence. State v. Mah Sam Hing, 89 Mont. 178, 186, 295 P. 1014. If any direct evidence is introduced against appellant it is not error to refuse circumstantial evidence instructions. State v. White, 146 Mont. 226, 239, 405 P.2d 761.

Finally, this court has reviewed those specification of error wherein appellant claims prejudicial error involving (1) the admission of Exhibit 2, Holly's check, and (2) the use of the term "Pink Palace" commonly used to describe the apartment building where Dixie was staying. We find no merit to either issue. The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and CASTLES, concur.